Anthony (Tony) GASTON, Petitioner–Appellant,

v.

Anna Ramirez PALMER, Respondent–Appellee.

No. 01–56367.

United States Court of Appeals, Ninth Circuit.

Submitted Sept. 10, 2003.*

Withdrawn from Submission Sept. 22, 2003.

Resubmitted Oct. 7, 2004.

Filed Oct. 28, 2004.

---

* The panel unanimously finds this case suitable for decision without oral argument. *See* Fed. R.App. P. 34(a).

Gerson Simon, Los Angeles, CA, for the petitioner-appellant.

Anthony (Tony) Gaston, California Medical Facility, Vacaville, CA, for the petitioner-appellant.

Kyle Brodie, Michelle J. Pirozzi, AGCA—Office of the California Attorney General, Los Angeles, CA, for the respondent-appellee.

Before: KLEINFELD, WARDLAW, and W. FLETCHER, Circuit Judges.

WILLIAM A. FLETCHER, Circuit Judge.

Anthony Gaston, a California prisoner, seeks review of the district court's dismissal of his petition for a writ of habeas corpus under 28 U.S.C. § 2254. The district court held that Gaston's petition was time-barred under the one-year statute of limitations of the Antiterrorism and Effective Death Penalty Act ("AEDPA"). 28 U.S.C. § 2244(d)(1). Gaston concedes that he filed his petition more than one year after the statutory period began to run, but he makes three arguments why the statute should be tolled. We agree with his third argument, and hold, on the facts of this case, that Gaston is entitled to tolling during the time his state court habeas applications were pending. "Pending," in this context, includes the intervals between the dismissal of one state applica-

tion and the filing of the next one. Because Gaston is allowed tolling for the time his state court applications were pending, his federal habeas petition is timely. We therefore reverse the district court's dismissal of his petition and remand for further proceedings.

## I.  Background

Gaston was found guilty by a Los Angeles County Superior Court jury of one count of first degree murder in 1994, and sentenced to 29–years–to–life in state prison. He timely appealed. Although Gaston was appointed counsel for his direct appeal, he moved to act as his own attorney. After Gaston was warned, by both his appointed attorney and the Court of Appeal, of the pitfalls of representing himself on appeal, the motion was granted.

Acting as his own attorney, Gaston neglected to file a brief in support of his appeal. On February 9, 1996, the California Court of Appeal dismissed the appeal for failure to file a brief. Gaston's conviction became final on March 20, 1996, forty days after the dismissal by the California Court of Appeal. *See* Cal. R. Ct. 24(b)(1), 28(e)(1). Because Gaston's conviction became final before the effective date of AEDPA, the statute of limitations for the filing of his federal habeas application began to run on April 24, 1996, the date AEDPA went into effect, and expired (in the absence of tolling) on April 24, 1997. *See Carey v. Saffold*, 536 U.S. 214, 216–17, 122 S.Ct. 2134, 153 L.Ed.2d 260 (2002).

Gaston filed six applications for habeas corpus in the California state courts. He filed his first application in the California Court of Appeal on July 11, 1995. This application was denied on February 27, 1996, before his conviction became final and before AEDPA's statute of limitations began to run. He filed his second application with the Los Angeles Superior Court on June 9, 1997. This application was denied on July 17, 1997. Gaston filed four additional habeas applications in the California state courts, all of which were denied. He filed in the California Supreme Court on August 11, 1997(denied on April 15, 1998); in Los Angeles County Superior Court on January 22, 1999 (denied on that date); in the California Court of Appeal on February 8, 1999 (denied on April 27, 1999); and in the California Supreme Court on February 28, 2000 (denied on June 2, 2000).

Gaston filed his first federal habeas petition on March 29, 1999. The district court dismissed the petition on March 1, 2000, "without prejudice to the petitioner's right to file a new petition after he has exhausted state remedies with regard to all issues raised therein." As noted above, the California Supreme Court denied Gaston's sixth and final state habeas application on June 2, 2000.

A few weeks later, on June 20, 2000, Gaston filed his second, current federal habeas petition. In support of his petition, Gaston submitted sworn statements and physicians' evaluations documenting physical and mental disabilities from which he states he suffers. He states that he "hears voices," that he suffers from severe pain and multiple sclerosis, and that he is paralyzed from the waist down. The record is in conflict as to the extent of these disabilities, but it is undisputed that Gaston has been in a wheelchair and on psychoactive medications since at least early 1996. Gaston claims that his physical and mental disabilities have made it difficult to gain access to, and to use effectively, the prison law library to prepare his federal habeas petition. The case was referred to a magistrate judge who recommended that the district court dismiss the petition as time barred under AEDPA's statute of limitations. 28 U.S.C. § 2244(d)(1). On de novo review, the district court adopted

the magistrate judge's findings and recommendations and dismissed the petition with prejudice.

The district court denied Gaston's application for a Certificate of Appealability. We granted a Certificate of Appealability on the issue of whether the district court properly dismissed his application as untimely. We review issues of law de novo and findings of fact for clear error. *Houston v. Roe*, 177 F.3d 901, 905 (9th Cir. 1999).

## II. Discussion

Gaston makes three arguments for tolling AEDPA's statute of limitations. He argues for equitable tolling; for statutory tolling due to an unconstitutional state "impediment," 28 U.S.C. § 2244(d)(1)(B); and for tolling based on "pending" state habeas applications. *Id.* § 2244(d)(2). We disagree with Gaston's first two arguments, but we agree with his third. We discuss the arguments in order.

### A. Equitable Tolling

■ Gaston argues that he is entitled to equitable tolling based on his self-representation on direct appeal and his physical and mental disabilities. "Equitable tolling will not be available in most cases, as extensions of time will only be granted if 'extraordinary circumstances' beyond a prisoner's control make it impossible to file a petition on time." *Calderon v. United States Dist. Ct. for the Centr. Dist. of Cal. (Beeler)*, 128 F.3d 1283, 1288 (9th Cir. 1997), *overruled in part on other grounds, Calderon v. United States Dist. Ct. for the Centr. Dist. of Cal. (Kelly)*, 163 F.3d 530, 540 (9th Cir.1998). Gaston bears the burden of showing that equitable tolling is appropriate. *Miranda v. Castro*, 292 F.3d 1063, 1065 (9th Cir.2002).

■ Gaston has not shown any causal connection between his self-representation on direct appeal and his inability to file a

federal habeas application. It is true that his failure to file an appellate brief while he represented himself caused his appeal to be dismissed, but he has not shown that his self-representation on appeal caused him to delay filing his federal habeas application. *See Spitsyn v. Moore*, 345 F.3d 796, 799 (9th Cir.2003) (petitioner must show that extraordinary circumstances were the cause of his untimeliness). Gaston's argument based on self-representation is therefore unpersuasive.

■ Gaston's argument that his physical and mental disabilities constituted an "extraordinary circumstance" is also unpersuasive. The magistrate judge believed, assuming no tolling was available, that the statute of limitations expired on April 24, 1997. On this assumption, the Report, adopted by the district court, found the following:

> [Gaston] alleges that he was physically and mentally incapable of filing a petition on time. However, on July 11, 1995, [Gaston] filed a state habeas petition in the California Court of Appeal. Thus it is clear that [Gaston] was physically and mentally capable of preparing and filing a petition on that date. [Gaston] filed a state habeas petition in the Los Angeles County Superior Court on June 9, 1997. Thus, [Gaston] was capable of preparing and filing a petition on that date. [Gaston] does not allege that his physical or mental condition between the two filings was significantly worse than his condition immediately before or after July 11, 1995 and June 9, 1997. Because [Gaston] was capable of preparing and filing state court petitions on July 11, 1995 and June 9, 1997, it appears that he was capable of preparing and filing a petition during the time in between those dates. On the record presently before the court, it appears that [Gaston] was capable of preparing

and filing a petition before the expiration of the statute of limitations on April 23, 1997.

The record before the magistrate and district judges was extensive, including numerous physicians' reports and affidavits by Gaston. It was not clear error for the district court to conclude that Gaston's physical and mental condition between July 11, 1995, and June 9, 1997, was not significantly worse than his condition immediately before or after those dates.

The district court therefore properly rejected Gaston's argument for equitable tolling.

### B. Tolling Under 28 U.S.C. § 2244(d)(1)(B)

Gaston seeks to toll the statute of limitations based on his contention that the State impeded his filing of a federal habeas petition. Section 2244(d)(1)(B) provides for tolling if there is an "impediment to filing an application created by State action in violation of the Constitution or laws of the United States." Gaston argues that there were two such state "impediments": the California Court of Appeal's granting his request to represent himself on direct appeal, and the restrictions he faced as a physically disabled prisoner in making use of the prison law library.

■ As noted above, Gaston has not shown a connection between the State's granting of his request to represent himself on appeal and his delay in filing his federal habeas petition. Therefore, Gaston's first claimed impediment is not persuasive.

■ The district court did not directly address Gaston's second claimed impediment. Gaston claims that the prison law library facilities were insufficiently accessible and thus constituted an impediment for someone with his physical disabilities. However, the district court's rejection of equitable tolling based on Gaston's disabilities constitutes an implicit rejection of his impediment argument. With respect to equitable tolling, the district court concluded that Gaston's disabilities did not render him incapable of filing in a timely manner because "he was capable of preparing and filing state court applications on July 11, 1995 and June 9, 1997, [so] he was capable of preparing and filing a petition during the time in between those dates." Although Gaston states that he had no access to legal materials or the prison law library while he was in the infirmary from November 1995 to March 1996, this episode took place before the statute of limitations began running in April 1996. He otherwise makes no argument that his physical disabilities were different in kind or degree during the period for which he claims an impediment.

The district court's rationale for rejecting Gaston's equitable tolling argument squarely applies to this state impediment claim. The district court therefore properly held that there was no "impediment" to Gaston's filing his federal habeas petition within the meaning of § 2244(d)(1)(B).

### C. Tolling Under 28 U.S.C. § 2244(d)(2)

Gaston also argues for statutory tolling under 28 U.S.C. § 2244(d)(2). That section provides that "[t]he time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection." Because of the unusual nature of California's system of post-conviction collateral relief, it is sometimes difficult to reconcile the statutory tolling provision of § 2244(d)(2) with California habeas corpus procedure. In particular, it is sometimes difficult to determine whether an application for California habeas relief is "pending" within the meaning of § 2244(d)(2). However, we do have two points of clearly established law to guide us.

First, the period during which a properly filed habeas application is actually before a state court—*i.e.*, from the date of its filing until its final disposition by that court—is tolled. Under any definition of the term "pending," the application is pending during that time. *See Saffold*, 536 U.S. at 218, 122 S.Ct. 2134 (implicitly holding as such); *Chavis v. LeMarque*, 382 F.3d 921, 925 (9th Cir.2004)(explicitly so holding); *Nino v. Galaza*, 183 F.3d 1003, 1005 (9th Cir.1999). Second, in states that provide for collateral relief through the typical process of filing a habeas application in a state court of first instance and then appealing its denial "up the ladder" to an intermediate appellate court and then to the state supreme court, the "interval[s] between a lower court's entry of judgment and the timely filing of a notice of appeal (or petition for review) in the next court" are also tolled. *Saffold*, 536 U.S. at 219–21, 122 S.Ct. 2134 (describing procedure in "typical 'appeal' States"). With these two established points in mind, we consider the peculiarities of California's "original writ" system. *See generally id.* at 221–25, 122 S.Ct. 2134; *People v. Duvall*, 9 Cal.4th 464, 473–79, 37 Cal.Rptr.2d 259, 265–68, 886 P.2d 1252, 1258–61 (1995) (providing a summary of California habeas corpus procedure).

California is not a typical "appeal" state. Instead, the California Constitution provides that each of the three levels of state courts—Superior Courts, Courts of Appeal, and the Supreme Court—has "original jurisdiction in habeas corpus proceedings." Cal. Const. art. VI, § 10. A California habeas petitioner, in contrast to his counterparts in typical appeal states, may file an original application for habeas relief in a Superior Court, a Court of Appeal, or the Supreme Court. *See, e.g., In re Clark*, 5 Cal.4th 750, 757–62, 21 Cal. Rptr.2d 509, 515–16, 855 P.2d 729, 735–36

(1993) (petitioner's first habeas application was filed in California Supreme Court). A Court of Appeal has "discretion to deny without prejudice a habeas corpus petition that was not filed first in a proper lower court," *i.e.*, a Superior Court, but the Court of Appeal need not do so. *In re Steele*, 32 Cal.4th 682, 691, 10 Cal.Rptr.3d 536, 542, 85 P.3d 444, 449 (2004) (citing, *inter alia*, *In re Ramirez*, 89 Cal.App.4th 1312, 1316, 108 Cal.Rptr.2d 229, 232 (2001) (a Court of Appeal " 'has discretion to refuse to issue the writ as an exercise of original jurisdiction on the ground that application has not been made therefor in a lower court in the first instance' ") (quoting *In re Hillery*, 202 Cal.App.2d 293, 294, 20 Cal.Rptr. 759, 760 (1962))). While the Superior Courts and Courts of Appeal have statewide territorial jurisdiction, *Griggs v. Superior Court*, 16 Cal.3d 341, 343–44, 128 Cal.Rptr. 223, 224–25, 546 P.2d 727, 728–29 (1976); *In re Van Heflin*, 58 Cal.App.3d 131, 134, 128 Cal. Rptr. 257, 259 (1976), California's Rules of Court provide a mechanism for Superior Courts to transfer a habeas application to the county where the matter "may be more properly heard." Cal. R. Ct. 4.552(b)(2)(A)-(B) (if an application "challenges the terms of a judgment, the matter may be transferred to the county in which judgment was rendered"; if an application "challenges the conditions of an inmate's confinement, it may be transferred to the county in which the petitioner is confined"); *see also In re Caffey*, 68 Cal.2d 762, 765 n. 3, 69 Cal.Rptr. 93, 96 n. 3, 441 P.2d 933, 936 n. 3 (1968) (receiving court must respect the transfer).

An application for state habeas relief in California must "allege with particularity the facts upon which[the petitioner] would have a final judgment overturned." *In re Swain*, 34 Cal.2d 300, 304, 209 P.2d 793, 796 (1949); *see id.* ("vague, conclusionary allegations ... are insufficient to warrant issuance of the writ ....."); *People v. Du-*

*vall,* 9 Cal.4th 464, 474, 37 Cal.Rptr.2d 259, 265, 886 P.2d 1252, 1258 (1995) (an application for habeas corpus should "state fully and with particularity the facts on which relief is sought") (citing, *inter alia, Swain,* 34 Cal.2d at 303, 209 P.2d at 796). An application for state habeas relief "should be filed as promptly as the circumstances of the case allow," *In re Stankewitz,* 40 Cal.3d 391, 396 n. 1, 220 Cal.Rptr. 382, 384 n. 1, 708 P.2d 1260, 1262 n. 1 (1986), and any "significant delay" must be explained and justified with particularity by the petitioner. *Clark,* 5 Cal.4th at 765 & n. 5, 21 Cal.Rptr.2d at 518 & n. 5, 855 P.2d at 738 & n. 5 (citing *Swain,* 209 P.2d at 795 ("[I]t is the practice of this court to require that one who belatedly presents a collateral attack such as this explain the delay in raising the question.")); *Stankewitz,* 40 Cal.3d at 396 n. 1, 220 Cal.Rptr. at 384 n. 1, 708 P.2d at 1262 n. 1 (petitioner "must point to particular circumstances sufficient to justify substantial delay"). If an application for habeas relief fails to state the relevant facts with particularity or to explain and justify a significant delay, a California court may deny it without prejudice and allow the petitioner to file "a new petition which shall meet [these] requirements." *Swain,* 34 Cal.2d at 304, 209 P.2d at 796.

■ If the initially filed application for habeas in California state court is denied with prejudice, the applicant may file a new original application in a different level of court or, if the denial was from a Court of Appeal, he may "apply for a hearing in the Supreme Court." Cal.Penal Code

§ 1506; *see In re Reed,* 33 Cal.3d 914, 918 n. 2, 191 Cal.Rptr. 658, 658 n. 2, 663 P.2d 216, 216 n. 2 (1983) (although "the sole and proper remedy after denial of a petition for writ of habeas corpus by a Superior Court is to file a new petition with the Court of Appeal," "[f]urther review may be sought in this court[, *i.e.,* the Supreme Court,] either by a new petition for habeas corpus or, preferably,[1] by a petition for hearing") (citing *In re Michael E.,* 15 Cal.3d 183, 193 n. 15, 123 Cal.Rptr. 103, 109 n. 15, 538 P.2d 231, 237 n. 15 (1975)). While a habeas petitioner can file identical claims in successive levels of California courts, he or she generally gets only "one bite at the apple" in each court because California has established a "general rule" that "all known claims" must be presented in a single application to a given court. *Clark,* 5 Cal.4th at 795, 21 Cal.Rptr.2d at 540, 855 P.2d at 760. Hence, "[b]efore considering the merits of a second or successive petition, a California court will first ask whether the failure to present the claims underlying the new petition in a prior petition [filed in that court] has been adequately explained, and whether that explanation justifies the piecemeal presentation of the petitioner's claims." *Id.* at 774, 21 Cal.Rptr.2d at 525, 855 P.2d at 745.

[A]bsent justification for the failure to present all known claims in a single, timely petition for writ of habeas corpus, successive and/or untimely petitions will be summarily denied. The only exception to this rule are petitions which allege facts which, if proven, would establish that a *fundamental* miscarriage of justice [2] occurred as a result of the pro-

---

1. Although the California Supreme Court "prefer[s]" that habeas petitioners ask for a hearing in that court after a denial by a Court of Appeal rather than file an original application, *Reed,* 33 Cal.3d at 918 n. 2, 191 Cal. Rptr. at 659 n. 2, 663 P.2d at 217 n. 2, we are unaware of any penalty imposed on a peti-

tioner who files an original application in lieu of requesting a hearing.

2. [F]or purposes of the exception to the procedural bar against successive or untimely petitions, a "fundamental miscarriage of justice" will have occurred in any proceeding in which it can be demonstrated: (1) that error

ceedings leading to conviction and/or sentence.

*Id.* at 797, 21 Cal.Rptr.2d at 540, 855 P.2d at 760 (emphasis in original).

In *Saffold,* the United States Supreme Court was presented with a petitioner who had followed a neat progression in the California courts. The petitioner in *Saffold* filed his first habeas application in the Superior Court, his second application in the Court of Appeal, and his third application in the California Supreme Court. All applications stated the same four claims, and all applications were denied. 536 U.S. at 217, 122 S.Ct. 2134; *see Welch v. Carey,* 350 F.3d 1079, 1082 (9th Cir.2003) (en banc) (discussing *Saffold*). Five days elapsed from the time the Superior Court denied the application until the applicant filed in the Court of Appeal, and four and one-half months elapsed from the time the Court of Appeal denied the application until he filed in the California Supreme Court. *Id.* On these facts, the Supreme Court held that California's "original writ" habeas system operated with sufficient similarity to the typical "appeal" systems found in other states to treat the two systems as functional equivalents. *Id.* at 223, 122 S.Ct. 2134. Applying the rules applicable to "appeal" systems, the Supreme Court allowed tolling pursuant to § 2244(d)(2) for the periods during which the three applications were actually pending before the Superior Court, Court of Appeal, and California Supreme Court, as well as the five day and four and one-half month intervals between each court's deni-

al and the next filing. *Saffold,* 536 U.S. at 217, 122 S.Ct. 2134.

However, not all California habeas applicants proceed through the California courts in as orderly a fashion as the applicant in *Saffold.* When applicants follow a more complicated or circuitous route, California's "original writ" system and its flexible procedural rules fit awkwardly with AEDPA's regime of cooperative federalism and deference to state courts. *See Saffold,* 536 U.S. at 222, 122 S.Ct. 2134 (Section 2244(d)(2) "is designed to protect the principles of comity, finality, and federalism, by promoting the exhaustion of state remedies while respecting the interest in the finality of state court judgments.") (citation and internal quotation marks omitted).

### 1. "Properly Filed"

Because § 2244(d)(2) tolls only the time during which a "properly filed" application for state collateral review is pending, we must examine Gaston's six state habeas applications to determine if each was properly filed within the meaning of the statute. In *Artuz v. Bennett,* the Supreme Court construed the meaning of "properly filed" as follows:

[A]n application is "properly filed" when its delivery and acceptance are in compliance with the applicable laws and rules governing filings. These usually prescribe, for example, the form of the document, the time limits upon its delivery, the court and office in which it must be lodged, and the requisite filing fee.

---

of constitutional magnitude led to a trial that was so fundamentally unfair that absent the error no reasonable judge or jury would have convicted the petitioner; (2) that the petitioner is actually innocent of the crime or crimes of which the petitioner was convicted; (3) that the death penalty was imposed by a sentencing authority which had such a grossly misleading profile of the petitioner before it that absent the trial error or omission no

reasonable judge or jury would have imposed a sentence of death; (4) that the petitioner was convicted or sentenced under an invalid statute. These claims will be considered on their merits even though presented for the first time in a successive petition or one in which the delay has not been justified.

*Clark,* 5 Cal.4th at 797–98, 21 Cal.Rptr.2d at 540–41, 855 P.2d at 760–61 (footnotes omitted).

... But in common usage, the question whether an application has been "properly filed" is quite separate from the question whether the claims contained in the application are meritorious and free of procedural bar.

531 U.S. 4, 8–9, 121 S.Ct. 361, 148 L.Ed.2d 213 (2000) (emphasis omitted). Applying this construction of the statute, we hold that all six of Gaston's state habeas applications were "properly filed."

■■ Putting Gaston's first and sixth state application aside for the moment, we observe that the California state courts denied Gaston's second through fifth applications without comment or citation. We construe "postcard" denials such as these to be decisions on the merits. *Hunter v. Aispuro*, 982 F.2d 344, 348 (9th Cir.1992) (reaffirming *Harris v. Superior Court of the State of Cal. for the County of L.A.*, 500 F.2d 1124, 1128 (9th Cir.1974) (en banc), *cert. denied*, 420 U.S. 973, 95 S.Ct. 1394, 43 L.Ed.2d 652 (1975) (holding that "a postcard denial without opinion [issued by the California Supreme Court] is ... a decision on the merits of the petition," except where a citation in the order indicates otherwise)); *cf. Clark*, 5 Cal.4th at 769 n. 9, 21 Cal.Rptr.2d at 520 n. 9, 855 P.2d at 741 n. 9 ("summary denial" of state habeas application "does not mean that the court has not considered the merits of the claims"). A decision on the merits necessarily implies that an application was "properly filed," because it is axiomatic that a court will not rule on the merits of an improperly filed application. Gaston's second through fifth applications may therefore be properly used for purposes of § 2242(d)(2) tolling.

■■ Gaston's sixth application was denied with citation to *In re Swain*, 34 Cal.2d at 303, 209 P.2d at 796, and *People v. Duvall*, 9 Cal.4th at 473, 37 Cal.Rptr.2d at 265, 886 P.2d at 1258. In *Swain*, the California Supreme Court "denied" Swain's ap-

plication "without prejudice to the filing of a new petition which shall meet the requirements above," *i.e.*, that Swain more fully elucidate the facts that entitle him to habeas relief and "disclose his reasons for delay[ ]." 34 Cal.2d at 304, 209 P.2d at 796; *see also Duvall*, 9 Cal.4th at 474, 37 Cal. Rptr.2d at 265, 886 P.2d at 1258(a habeas application should "state fully and with particularity the facts on which relief is sought") (citing, *inter alia, Swain*, 34 Cal.2d at 304, 209 P.2d at 796). The ruling in *Swain* was thus not a final ruling on the merits of Swain's state habeas application, but rather was, in effect, a grant of a demurrer with leave to refile. California is a "code pleading" state in which facts must be pled with particularity in a civil suit, and a demurrer is the procedural device used to challenge the adequacy of pleading in a complaint or cross-claim. *See Smith v. Kern County Land Co.*, 51 Cal.2d 205, 209, 331 P.2d 645, 648 (1958) (To prevail "against a special demurrer, a plaintiff is required [ ] to 'set forth in his complaint the essential facts of his case with reasonable precision and with particularity sufficiently specific to acquaint the defendant of the nature, source, and extent of his cause of action.' ") (quoting *Goldstein v. Healy*, 187 Cal. 206, 210, 201 P. 462, 463 (1921)); Black's Law Dictionary 444 (7th ed.1999) (noting that while in most jurisdictions, a "pleading stating that although the facts alleged in a complaint may be true, they are insufficient for the plaintiff to state a claim for relief and for the defendant to frame an answer" is generally termed a motion to dismiss, "the demurrer is still used in a few states, including California").

In light of its citations to *Swain* and *Duvall*, we read the California Supreme Court's denial of Gaston's sixth habeas application as, in effect, the grant of a demurrer, *i.e.*, a holding that Gaston had not pled facts with sufficient particularity.

While Gaston's sixth application was thus procedurally deficient under California law, it was not improperly filed within the meaning of § 2244(d)(2). *Bennett,* 531 U.S. at 9, 121 S.Ct. 361 ("the question whether an application has been 'properly filed' is quite separate from the question whether the claims contained in the application are ... free of procedural bar") (emphasis omitted). There is no indication that the application was time-barred, lodged in the wrong court or office, or formatted improperly. *See id.* at 8, 121 S.Ct. 361. Thus, because Gaston's sixth state application's "delivery and acceptance[was] in compliance with the applicable laws and rules governing filings," it was "properly filed" despite being procedurally flawed, and therefore may properly be used for purposes of § 2244(d)(2) tolling.

■ The California Court of Appeal denied Gaston's first state habeas application "for lack of an adequate record." While the Court of Appeal did not cite any case law, we read this denial as based on a procedurally analogous ground to that underlying the denial of Gaston's sixth application. The sixth application was denied for failure to plead facts with sufficient particularity; the first application was denied for failure to supply a record with supporting facts. We therefore construe the Court of Appeal's denial of Gaston's first application as a denial without prejudice, analogous to the Supreme Court's denial without prejudice of Gaston's sixth application. In both cases, the dismissal was based on a fact-based deficiency, either as a matter of pleading of the facts, or of presentation of the record from which the facts could be ascertained. In neither case was the denial based on a holding that the application was improperly filed within the meaning of § 2244(d)(2).

We therefore conclude that all of Gaston's six California habeas applications were "properly filed" within the meaning of § 2244(d)(2).

### 2. "Application" and "Claim"

Having determined that all of Gaston's state applications were properly filed, we consider their tolling effect under 28 U.S.C. § 2244(d)(2). Before doing so, however, we note a key difference in the analysis of tolling under § 2244(d)(2), on the one hand, and exhaustion under 28 U.S.C. § 2254(b)(1)(A), on the other. Section 2244(d)(2) provides for tolling while a habeas "application" is pending in state court. A habeas "application" for which the period is tolled may contain one or more "claims." *See Bennett,* 531 U.S. at 9, 121 S.Ct. 361. Section 2254(b)(1)(A) requires a federal habeas petitioner to have exhausted his or her claims in state court before coming to federal court. Exhaustion is determined on a claim-by-claim basis. *See, e.g., Hiivala v. Wood,* 195 F.3d 1098, 1106 (9th Cir.1999) ("A habeas petitioner must give the state courts the first opportunity to review any claim of federal constitutional error before seeking federal habeas review of *that claim.*") (emphasis added). "Only individual *claims,* and not the *application* containing those claims, can be procedurally defaulted under state law" pursuant to the adequate and independent state ground doctrine. *Bennett,* 531 U.S. at 9, 121 S.Ct. 361 (emphasis in original). In *Bennett,* the Supreme Court held that the issue of whether a state habeas application was "properly filed" is to be answered by looking at the "application" for state habeas relief as a single entity, and not to the claims contained therein on a claim-by-claim basis. *Id.* at 10, 121 S.Ct. 361. It follows that the relevant question for § 2244(d)(2) tolling purposes is whether a properly filed application is pending in state court, and not whether any particular claim was con-

tained in that application. *Bennett*, 531 U.S. at 8–10, 121 S.Ct. 361.

### 3. "Pending"

We know that AEDPA's statute of limitations is tolled pursuant to § 2244(d)(2) during the periods between the filing of Gaston's applications in the California courts and the disposition of those applications. *See Saffold*, 536 U.S. at 218, 122 S.Ct. 2134; *Chavis*, 382 F.3d at 925; *Nino*, 183 F.3d at 1005. Whether Gaston is entitled to tolling of the intervals between the disposition of one application and the filing of another is, however, a more complicated matter.

■ In *Saffold*, the State of California argued that AEDPA's statute of limitations should not be tolled during the intervals between applications because "during this period of time, the petition is not under court consideration" and therefore not "pending." 536 U.S. at 219, 122 S.Ct. 2134. The Supreme Court disagreed. It wrote, first, that California's "reading of the word 'pending' [ ] is not consistent with the word's ordinary meaning," *id.* at 219, 122 S.Ct. 2134, and, second, that such a construction of "pending" would do violence to Congress's intent in passing AEDPA. It explained:

> California's reading would also produce a serious statutory anomaly. A federal habeas petitioner must exhaust state remedies before he can obtain federal habeas relief. The statute makes clear that a federal petitioner has not exhausted those remedies as long as he maintains "the right under the law of the State to raise" in that State, "by any available procedure, the question presented." 28 U.S.C. § 2254(c). We have interpreted this latter provision to require the federal habeas petitioner to "invok[e] one complete round of the State's established appellate review process." *O'Sullivan v. Boerckel*, 526 U.S.

838, 845 [119 S.Ct. 1728, 144 L.Ed.2d 1] (1999). The exhaustion requirement serves AEDPA's goal of promoting "comity, finality, and federalism," *Williams v. Taylor*, 529 U.S. 420, 436 [120 S.Ct. 1479, 146 L.Ed.2d 435] (2000), by giving state courts "the first opportunity to review [the] claim," and to "correct" any "constitutional violation in the first instance." *Boerckel, supra*, at 844–845 [119 S.Ct. 1728]. And AEDPA's limitations period—with its accompanying tolling provision—ensures the achievement of this goal because it "promotes the exhaustion of state remedies while respecting the interest in the finality of state court judgments." *Duncan v. Walker*, 533 U.S. 167, 178 [121 S.Ct. 2120, 150 L.Ed.2d 251] (2001). California's interpretation violates these principles by encouraging state prisoners to file federal habeas petitions before the State completes a full round of collateral review. This would lead to great uncertainty in the federal courts, requiring them to contend with habeas petitions that are in one sense unlawful (because the claims have not been exhausted) but in another sense required by law (because they would otherwise be barred by the 1–year statute of limitations).

*Id.* at 220, 122 S.Ct. 2134.

The Court in *Saffold* therefore held that habeas petitioners in "typical 'appeal' States" are entitled to "interval" tolling under § 2244(d)(2), that is, to tolling for the time "during the interval between a lower court's entry of judgment and the timely filing of a notice of appeal (or petition for review) in the next court." *Id.* at 219, 221, 122 S.Ct. 2134. On the facts of *Saffold*, the Court held that habeas petitioners proceeding through California's "original writ" system are also entitled to "interval tolling." *Id.* at 223, 122 S.Ct. 2134; *see Nino*, 183 F.3d at 1006 (holding that "the AEDPA statute of limitations is

tolled for 'all of the time during which a state prisoner is attempting, through proper use of state court procedures, to exhaust state court remedies with regard to a particular post-conviction application.' ") (quoting *Barnett v. Lemaster*, 167 F.3d 1321, 1323 (10th Cir.1999)).

In *Welch*, 350 F.3d 1079, we explored the boundaries of the Supreme Court's holding in *Saffold*. The petitioner in *Welch* filed a habeas application in California Superior Court in 1994 asserting ineffective assistance of counsel. The application was denied shortly thereafter. Four years later, in 1998, he filed another application for state habeas relief, this time in the California Supreme Court. In this second state application, "he alleged new and different grounds for relief than the ground advanced in his 1994 claim." *Id.* at 1080. We held in *Welch* that the petitioner had "abandoned" his first set of claims such that there was no application "pending" for purposes of § 2244(d)(2) during the interval between his first and second applications. 350 F.3d at 1083. That is, the petitioner was not entitled to interval tolling for the four-year interim between applications. *Id.* at 1083–84.

Reading *Saffold* and *Welch* together, we see that when a California habeas applicant is behaving as he would in a typical appeal state—*i.e.*, bringing the same claims to the court of first instance, then appealing the denial (or otherwise seeking review) in an expeditious fashion—he will be entitled to interval tolling. *Saffold*, 536 U.S. at 223, 122 S.Ct. 2134. By contrast, when a California applicant displays neither of these "typical" characteristics—*i.e.*, there is no overlap among the claims presented in the different applications, and the applicant waits four years between applications—interval tolling will not be available. *Welch*, 350 F.3d 1079. Many cases, including the one now before us, are somewhere in between these two extremes. In such a case, our task is to apply the statute in a manner that balances Congress's interest in "giv[ing] States the opportunity to complete one full round of review, free of federal interference," on the one hand, and its interest in "encouraging prompt filings in federal court in order to protect the federal system from being forced to hear stale claims," on the other. *Saffold*, 536 U.S. at 222, 226, 122 S.Ct. 2134.

In accord with the "state opportunity" goal of AEDPA, each state declares and enforces its own timeliness rules. *See, e.g., Clark*, 5 Cal.4th at 774–85, 21 Cal. Rptr.2d at 525–33, 855 P.2d at 745–53 (discussing state diligence requirement). Thus, if a California court is willing to consider a habeas application on the merits, even if the applicant waited a long time to file after having been denied by another level of California court, the "state opportunity" goal of AEDPA is served by allowing tolling for the interval between the two applications. *See Chavis*, 382 F.3d at 925 (allowing tolling in the interval between two state habeas petitions because the later petition was not dismissed as untimely). But unrestricted interval tolling is in substantial tension with AEDPA's goal of preventing the filing of stale claims in federal court. We therefore held in *Welch* that a four-year interval between applications containing unrelated claims is not entitled to interval tolling.

With this in mind, we examine Gaston's six state habeas applications. Gaston's first application, filed in the California Court of Appeal on July 11, 1995, asserted four grounds for relief:

(1) False imprisonment and ineffective assistance of counsel ("IAC") for failing to call witnesses in this regard;

(2) Lack of *Miranda* warnings and IAC for failing to challenge the violation;

(3) IAC for failing to move to suppress a gun;

(4) Deprivation, by trial attorney, of trial transcripts to be used for pro se appeal.

This application was denied on February 27, 1996 for lack of an adequate record, before AEDPA's statute of limitations began to run. As explained above, we construe such a denial as essentially a demurrer with leave to refile.

Gaston's second application was filed in California Superior Court on June 9, 1997, shortly after the statute of limitations began to run. It stated five grounds for relief:

(1) False imprisonment and IAC for failing to call witnesses in this regard;

(2) IAC for failing to move to suppress a gun;

(3) Physically coerced confession, lack of *Miranda* warnings, IAC for failing to challenge these violations;

(4) IAC for failure to challenge ballistic test;

(5) Illegal search of Gaston's girlfriend's residence.

This application was denied on July 17, 1997.

Gaston's third application was filed in the California Supreme Court in August 11, 1997. It sought relief from the procedural default of his direct appeal resulting from his failure to file an appellate brief. This application was denied on April 15, 1998.

Gaston's fourth, fifth, and sixth applications were filed in California Superior Court on January 22, 1999(denied on that date), the California Court of Appeal on February 8, 1999 (denied on April 27, 1999), and the California Supreme Court on February 28, 2000 (denied on June 2, 2000). All asserted the following eleven grounds for relief:

(1) Physically coerced confession;

(2) IAC for failing to call witnesses regarding false imprisonment;

(3) IAC for failing to discover tape recorded evidence regarding *Miranda* violation;

(4) IAC for failing to move to suppress a gun;

(5) IAC for failure to challenge ballistic test;

(6) IAC for conflict of interest;

(7) Insufficient evidence to convict;

(8) *Brady* violation;

(9) Prosecutorial misconduct;

(10) Abuse of discretion by appeals court to allow him to act as own attorney;

(11) IAC for failure to object to hearsay.

Unlike the petitioner in *Welch,* Gaston did not present unrelated applications to the state courts. Rather, Gaston pursued applications in the California state courts with overlapping or identical claims. Only Gaston's third application, presenting a claim based on his failure to file an appellate brief, was entirely independent of his other applications. All five of the other applications contained some overlapping or identical claims. For example, Gaston's claims of IAC for failing to call witnesses regarding false imprisonment and for failing to move to suppress a gun are contained in his first, second, fourth, fifth, and sixth state applications. Gaston filed two applications in the California Supreme Court. These IAC claims were not included in his first application to the California Supreme Court (his third application), but they were included in his second application to that court (his sixth application).

Moreover, Gaston never sought reversal by a lower state court of a decision by a higher court. He never sought reversal by a Superior Court of a decision by a Court of Appeal, and he never sought reversal by either a Superior Court or a Court of

Appeal of a decision of the Supreme Court. The sequence of Gaston's six state court applications was as follows: (1) Court of Appeal; (2) Superior Court; (3) Supreme Court; (4) Superior Court; (5) Court of Appeal; (6) Supreme Court. Gaston's first application, filed in the Court of Appeal, was dismissed without prejudice for lack of documentation; because that application was dismissed without prejudice, later filings based on the same claims, in that court or any other court, were not precluded. Gaston's third application was filed in the Supreme Court, but that application was based on a claim not raised in either his earlier or later state applications, or in his federal habeas petition. Gaston's fourth, fifth and sixth applications were then, in orderly sequence, in the Superior Court, the Court of Appeal, and Supreme Court. Gaston's sixth application, in the Supreme Court, was the first application in which he raised in that court the claims he now seeks to bring in his federal habeas petition. After the California Supreme Court denied that sixth application, Gaston came directly to federal court.

None of the California courts denied Gaston's applications on timeliness grounds or for lack of diligence. *Cf. Saffold*, 536 U.S. at 225, 122 S.Ct. 2134 (California Supreme Court denied petition "on the merits and for *lack of diligence*") (emphasis added). The intervals between Gaston's state court habeas applications are as follows: (1) Interval 1: 468 days (first application denied February 27, 1996; second application filed June 9, 1997); (2) Interval 2: 25 days (second application denied July 17, 1997; third application filed August 11, 1997); (3) Interval 3: 282 days (third application denied April 15, 1998; fourth application filed January 22, 1999); (4) Interval 4: 17 days (fourth application denied January 22, 1999; fifth application filed February 8, 1999); (5) Interval 5: 307 days (fifth application de-

nied April 27, 1999; sixth application filed February 28, 2000).

The longest interval was the first one, 468 days. However, that interval began before Gaston's conviction became final on March 20, 1996, and before the AEDPA statute of limitations began to run on April 24, 1996. The second and third longest intervals are 307 and 282 days. All three of these intervals are far less than the four-year interval held to have been too long in *Welch*.

In *Welch*, the length of the interval and the complete unrelatedness of the claims in the two state applications led us to conclude that the applicant had abandoned the claims contained in the first applications. We therefore concluded that the petitioner in *Welch* was not entitled to interval tolling. Here, by contrast, the intervals were much shorter and some of Gaston's claims were continuously litigated, beginning with his first application and ending with his sixth. On these facts, we hold that Gaston is entitled to interval tolling for all five intervals under *Saffold* and *Welch*.

Because Gaston is entitled to tolling for all five intervals, AEDPA's statute of limitations was tolled until June 3, 2000, the date his sixth petition was denied by the California Supreme Court. Gaston filed his second federal habeas petition on June 20, 2000, only seventeen days into the limitations period. Gaston's petition is therefore timely.

### 4. Exhaustion

Because the district court dismissed Gaston's second federal habeas petition as untimely, it did not reach the question whether the claims contained in the petition had been exhausted in state court. We remand to the district court for a determination of whether those claims have been exhausted.

Conclusion

For the reasons stated above, we VACATE the dismissal of Gaston's federal habeas application as untimely and REMAND to the district court for further proceedings.

KLEINFELD, Circuit Judge, dissenting.

I concur in parts I, II(A), and II(B), but respectfully dissent as to part II(C). There are two things wrong with tolling Gaston's one year limitations period. First, he was not pursuing anything like the appellate exhaustion process contemplated by AEDPA, when he randomly filed petitions up, down and sideways in the California courts, instead of starting in a lower court and then going to a higher court. Second, his delays between petitions were too long to justify counting nonpending petitions as pending for AEDPA purposes.

Gaston started in the middle, at the California Court of Appeal, went down to the Superior Court, and then jumped up to the Supreme Court. Then he went through a complete second round. That is not the proper course of exhaustion that justifies tolling.

*Carey v. Saffold* allows tolling for the "intervals between a lower court decision and the filing of a new petition in a higher court."[1] That's not what Gaston did. In *Saffold,* the Supreme Court recognized that a petitioner must " 'invok[e] one complete round of the State's established appellate review process' "[2] to exhaust his claim. This general principle presented a problem because of California's peculiar

system of using original writs to obtain appellate review, because if the time between petitions were not tolled, the exhaustion requirement of AEDPA would conflict with the statute of limitations in AEDPA. The Court solved the problem by noting that "typically a prisoner will seek habeas review in a lower court and later seek appellate review in a higher court,"[3] so "California's collateral review process functions very much like that of other states, but for the fact that its timeliness rule is indeterminate."[4] The Court determined that California's system was enough like other states' procedures "to bring intervals between a lower court decision and a filing of a new petition in a higher court within the scope of the statutory word 'pending.' "[5]

The "intervals between a lower court decision and a filing of a new petition in a higher court," which are the only intervals deemed "pending" for AEDPA purposes under *Saffold* can't save Gaston's petition because that's not direction he went. No tolling after his second petition can be justified because the analogy to the usual appellate ladder, set out in *Saffold,* no longer held. The intervals between petitions were no longer what *Saffold* justifies as "intervals between a lower court decision and the filing of a new petition in a higher court."[6]

Because Gaston was not pursuing anything like the uphill appellate process contemplated in *Saffold* when he petitioned the Superior Court after petitioning the Court of Appeal, no application was pending in this case between the first two filings. The clock began running when

**1.** *Carey v. Saffold,* 536 U.S. 214, 223, 122 S.Ct. 2134, 153 L.Ed.2d 260 (2002).

**2.** *Saffold,* 536 U.S. at 220, 122 S.Ct. 2134(quoting *O'Sullivan v. Boerckel,* 526 U.S. 838, 845, 119 S.Ct. 1728, 144 L.Ed.2d 1 (1999)).

**3.** *Id.* at 222, 122 S.Ct. 2134.

**4.** *Id.*

**5.** *Id.* at 223, 122 S.Ct. 2134.

**6.** *Saffold,* 536 U.S. at 223, 122 S.Ct. 2134.

AEDPA became effective, April 24, 1996. At that time Gaston's first petition had already been denied by the California Court of Appeal. His next petition, because he went down the ladder instead of up, did not toll the statute of limitations at all. So the limitations period ran out in April of 1997, a year after AEDPA became effective. At that time he had not filed his third petition, which was the first of his two petitions to the California Supreme Court.

Even if this were not the end of the matter (which I think it is), the time intervals between Gaston's petitions are still too long for *Saffold* and for our en banc decision in *Welch v. Carey*.[7] The majority takes the view that Gaston's 307 day and 282 day intervals, when he had nothing pending anywhere, should nevertheless toll the statute of limitations because they are "far less than the four-year interval held to have been too long in *Welch*."[8] But *Saffold* and *Welch* cannot be read to mean that anything less than four years is permissible. In *Saffold* the Supreme Court suggested, in dictum, that the Ninth Circuit's panel decision in *Welch*, before we reheard *Welch* en banc, allowing the four-year delay, was erroneous.[9] The Court held that, even where the state court reached the merits rather than dismissing a petition as untimely, we could not treat that as implying a state determination of timeliness.[10]

Nor did the Court in *Saffold* simply approve the four-and-a-half month delay (much shorter than Gaston's). Instead, it remanded because it was possible that a special circumstance existed, since Saffold

was not notified of the Court of Appeal decision, and filed his petition in the California Supreme Court "within days after receiving notification."[11] And our unanimous en banc decision in *Welch*, far from suggesting that anything less than four years was permissible, held that four years was impermissible because "Congress and the courts appropriately built slack into the process by providing a reasonable grace period for pending applications, not for open-ended and unjustified delay in pursuing claims and relief."[12] Our contrast was with another case where a claim was "pursued up the appropriate ladder and where the petitioner waited no more than six weeks between filing each petition."[13] 307 and 282 days exceed a "reasonable grace period." Legal deadlines are usually on the order of 7, 10, 30, and 60 days.

The point of the play in the joints allowed by *Saffold* and *Welch* is to fold California's unusual procedure into something akin to an ordinary state appellate exhaustion process, with the exception, as the Court noted in *Saffold*, that instead of the usual fixed and rigid period for filing notice of appeal, California allows a reasonable time to take a claim "up the ladder" to the next higher court. Expanding this to a petitioner who goes down the ladder instead of up, and who waits the better part of a year between filings, makes a mockery of the statute of limitations that Congress has imposed.

---

7. *Welch v. Carey,* 350 F.3d 1079 (2003) (en banc).

8. Majority Op. at 1018.

9. *Saffold,* 536 U.S. at 226, 122 S.Ct. 2134.

10. *Id.* at 225–26, 122 S.Ct. 2134.

11. *Id.* at 226, 122 S.Ct. 2134.

12. *Welch,* 350 F.3d at 1083.

13. *Id.* at 1084 (contrasting the factual circumstances in *Nino v. Galaza,* 183 F.3d 1003 (9th Cir.1999)).