[Crim. No. 5015.   In Bank.   Sept. 26, 1949.]

In re CECIL SWAIN, on Habeas Corpus.

Cecil Swain, in pro. per., for Petitioner.

No appearance for Respondent.

SCHAUER, J.—In November, 1945, petitioner was convicted of first degree murder and sentenced to state prison for the term of his natural life; by this application for habeas corpus he (appearing in propria persona) attacks the validity of the judgment of conviction. For the reasons hereinafter stated, we have concluded that his application should be denied.

The petition contains averments of conclusions which, if they were entitled to acceptance at full value, would require issuance of the writ. Petitioner alleges that the judgment was "obtained through 'FRAUD, FALSE PERJURED TESTIMONY,' knowingly, consciously and deliberately used by the . . . prosecuting attorney in prosecuting the petitioner . . . That your petitioner was knowingly, consciously and deliberately denied an eye witness at the seen [sic] of the offense by the said prosecuting attorney, in the proceedings against petitioner. That the said witness is Mrs. Mollokoff, and lived at that time at 1318½ E Street, Sacramento, California . . . That the said prosecuting attorney substituted one Norvin E. Smith, to translate the testimony of said witness that the petitioner was denied of, and that the said Norvin E. Smith, consciously and deliberately 'FALSELY TESTIFIED' as to the statements made by the said witness that was

302

denied the petitioner, and that he, the said Norvin E. Smith, made FALSE and PREJUDICE [sic] STATEMENTS against the petitioner in his testimony."

■ It is the practice of this court to require, substantially, that one who seeks to show that his conviction was obtained by the prosecution's knowing use of perjured testimony quote or otherwise designate specifically the precise testimony which it is asserted was perjured, state in detail what the actual facts are, and name or otherwise identify the person connected with the prosecution who knew it was perjured and persisted in using it, stating also the circumstances establishing such person's knowledge of the facts. Petitioner has not informed us what testimony of Mrs. Mollokoff was assertedly suppressed or what testimony of Mr. Smith was assertedly false, nor has he stated the circumstances establishing that the "prosecuting attorney" knew these facts.

Furthermore, it is the practice of this court to require that one who belatedly presents a collateral attack such as this explain the delay in raising the question. Such an explanation is particularly necessary in the present case, where petitioner did not appeal from the judgment of conviction and, despite ten previous attacks upon its validity,[1] has raised the question of perjury for the first time in the courts of this state in the present proceeding.

■ The above requirements of detailing the facts upon which a conclusionary allegation is based, and of explaining delay in raising the question, apply also to petitioner's second contention: "That your petitioner was proceeded against, convicted and sentenced to prison for his NATURAL LIFE while he was MENTAL INFIRMITY [sic] incapable of making his defense, for the reason of his involuntary servitude of long-continued intoxication for over a period of years." Petitioner alleges that there was an "Examination made by the request of the trial judge, of the defendants [sic] insanity" but complains that the question was not "submitted to a jury for their consideration." However, petitioner does not state the evidence upon which the trial judge determined that he was sane, and therefore we have no means of knowing whether

[1]Petition for habeas corpus in the trial court, petition for habeas corpus in the District Court of Appeal (1 Cr. 2575), two previous petitions for habeas corpus in this court (Cr. 4895, 4968), three petitions for habeas corpus in the United States District Court, two petitions for certiorari in the United States Supreme Court (93 L.Ed.Adv.Op. 28, 615), petition for habeas corpus in the United States Supreme Court (93 L.Ed. Adv.Op. 897), all denied without opinion.

the determination is subject to attack. Furthermore, petitioner does not allege that he demanded a jury trial, as he should have done under section 1368 of the Penal Code if he wished the question of his sanity submitted to a jury. That section, in material part, provides, "If at any time during the pendency of an action and prior to judgment a doubt arises as to the sanity of the defendant, the court must order the question as to his sanity to be determined by a trial by the court without a jury, or with a jury, *if a trial by jury is demanded. . .*" (Italics added.)

■ Next, petitioner alleges that the attorney who represented him at the trial "obtained the case through fraud from the Brother of the petitioner for the sum of one hundred (100) dollars" and that the attorney "is untruthful, unfaithful and working hand to hand with the prosecutor in depriving the defendant of his 'life' and 'liberty' without 'due process of law.'" There are no allegations of specific facts supporting the conclusions of fraud and untruthfulness.

■ Finally, petitioner alleges that the warden of the prison refuses to allow petitioner to have a certified copy of the warrant of his arrest which, pursuant to petitioner's request, was sent to petitioner, in care of the warden, by the clerk of the municipal court; that on the 9th and 19th of April, 1948, "petitioner was denied legal communication with the said clerk on obtaining information in connection with the proceedings against petitioner. That your petitioners [sic] out-going 'Registered Mail' which was registered in the post office and charged to him here at San Quentin Prison was not delivered to the place so addressed. That your petitioner has good cause to believe that the said 'Registered Mail' was kept or destroyed by the authorities here at the prison, and can produce the numbers and dates of all mail and copies of same." Whatever the certified copy of the warrant of arrest may show, it is not made to appear here how it could affect the legality of petitioner's imprisonment under the subsequent judgment of conviction. And in the absence of allegations as to the nature and substance of the communications which petitioner assertedly is not allowed to send to the court clerk, we cannot say that the prison officials are not justified in refusing to permit such correspondence.

■ It should be noted that no question of the abuse of the writ of habeas corpus is before us (*cf., Price* v. *Johnston* (1947), 334 U.S. 266, 286 [68 S.Ct. 1049, 92 L.Ed. 1356]), and that our determination that the vague, conclusionary al-

legations of the present petition are insufficient to warrant issuance of the writ is not a ruling on the merits of the issues which petitioner has attempted to raise (cf., *Pyle* v. *Kansas* (1942), 317 U.S. 213, 216 [63 S.Ct. 177, 87 L.Ed. 214]; *Williams* v. *Kaiser* (1944), 323 U.S. 471 [65 S.Ct. 363, 89 L.Ed. 398]; *Tompkins* v. *Missouri* (1944), 323 U.S. 485 [65 S.Ct. 370, 89 L.Ed. 407]; *Rice* v. *Olson* (1944), 324 U.S. 786 [65 S.Ct. 989, 89 L.Ed. 1367]). We are entitled to and we do require of a convicted defendant that he allege with particularity the facts upon which he would have a final judgment overturned and that he fully disclose his reasons for delaying in the presentation of those facts. This procedural requirement does not place upon an indigent prisoner who seeks to raise questions of the denial of fundamental rights in propria persona any burden of complying with technicalities; it simply demands of him a measure of frankness in disclosing his factual situation.

The application for the writ is denied without prejudice to the filing of a new petition which shall meet the requirements above specified.

Gibson, C. J., Shenk, J., Edmonds, J., Carter, J., Traynor, J., and Spence, J., concurred.