[Crim. No. 13327.   Second Dist., Div. Four.   Feb. 29, 1968.]

THE PEOPLE, Plaintiff and Respondent, v. ERNEST
GENE LAMPKIN, Defendant and Appellant.

Donald F. Roeschke, under appointment by the Court of Appeal, for Defendant and Appellant.

Thomas C. Lynch, Attorney General, William E. James, Assistant Attorney General, and Richard H. Cooper, Deputy Attorney General, for Plaintiff and Respondent.

FILES, P. J.—On November 10, 1965, appellant was sentenced to state prison following his plea of guilty of the offense of manslaughter (Pen. Code, § 192). There was no valid appeal from the judgment.

On January 23, 1967, appellant filed in the superior court a petition for writ of error *coram nobis*. The judge who had heard the earlier proceedings considered the petition and, without formal hearing, made a minute order denying it. This appeal is from that order.

■ A petition for *coram nobis* does not open the entire criminal proceeding for review. In *People* v. *Shipman,* 62 Cal.2d 226, 230 [42 Cal.Rptr. 1, 397 P.2d 993], the Supreme Court said: ''The writ of *coram nobis* is granted only when three requirements are met. (1) Petitioner must 'show that some fact existed which, without any fault or negligence on his part, was not presented to the court at the trial on the merits, and which if presented would have prevented the rendition of the judgment.' [Citations.] (2) Petitioner must also show that the 'newly discovered evidence . . . [does not go] to the merits of issues tried; issues of fact, once adjudicated, even though incorrectly, cannot be reopened except on motion for new trial.' [Citations.] This second requirement applies even though the evidence in question is not discovered until after the time for moving for a new trial has elapsed or the motion has been denied. [Citations.] (3) Petitioner 'must show that the facts upon which he relies were not known to him and could not in the exercise of due diligence have been discovered by him at any time substantially earlier than the time of his motion for the writ. . . .' [Citations.]

''In view of these strict requirements, it will often be readily apparent from the petition and the court's own records that a petition for *coram nobis* is without merit and should therefore be summarily denied. When, however, facts have been alleged with sufficient particularity (see *In re Swain,* 34 Cal.2d 300, 304 [209 P.2d 793]) to show that there are substantial legal or factual issues on which availability of the writ turns, the court must set the matter for hearing.''

The issue here is whether the petition filed January 23, 1967, read in the light of the facts already known to the trial judge and reflected in the superior court file, raised any substantial legal or factual issue on which petitioner was entitled to a hearing. In order to consider that issue, this court has ordered the superior court file transmitted to this court as an augmentation of the record on appeal. This file includes a reporter's transcript of the proceedings on arraignment for judgment, and a transcript of the oral proceedings on change of plea, which the trial court ordered prepared at the time it considered the petition for *coram nobis.*

The chronology is as follows:

June 30, 1965. An information was filed charging appellant and his codefendant, Mrs. Foreman, with murder, and alleging appellant had had a prior conviction of burglary.

July 22, 1965. Motion to set aside the information under Penal Code section 995 was denied. Appellant pleaded not guilty and denied the prior.

September 29, 1965. The parties and the court agreed that, prior to the selection of a jury, a hearing would be held to determine the admissibility of the extrajudicial statements of the two defendants.

September 30 and October 1, 1965. That hearing was held. The defendants and a police officer testified. The issue was argued by counsel and the motion of each defendant to suppress the evidence was denied. Both defendants then made a motion to sever. More testimony was taken, the motions were submitted, and the hearing continued to October 4.

October 4, 1965. Appellant changed his plea to guilty of manslaughter and stipulated that the truth or falsity of the prior should be determined at the time of the probation and sentence hearing, from the probation report.

October 6, 1965. A written statement of the district attorney was filed, recommending that appellant be allowed to plead guilty to manslaughter and that the charges against Mrs. Foreman be dismissed.

October 27, 1965. The court made a minute order finding the offense to be involuntary manslaughter. The matter was referred to the Director of the Department of Corrections for review regarding placement of appellant for diagnosis and treatment pursuant to Penal Code section 1203.03.

November 10, 1965. Appellant's motion to withdraw his plea of guilty was argued and denied. Probation was denied. The prior was found true. Appellant was sentenced to state prison.

November 17, 1965. Appellant filed a notice of appeal from the judgment. However, he did not follow it with a statement required by Penal Code section 1237.5.[1] No certificate of probable cause was filed.

January 5, 1966. The clerk of the superior court notified appellant that no further action would be taken with respect to the appeal until he complied with section 1237.5, which was

---

[1]Section 1237.5: "No appeal shall be taken by defendant from a judgment. of conviction upon a plea of guilty or nolo · contendere, except where:

"(a) The defendant has filed with the trial court a written statement, executed under oath or penalty of perjury showing reasonable· constitutional, jurisdictional, or. other grounds going to the legality of the proceedings; and

"(b) The trial court has executed and filed a certificate of probable cause for such appeal with the county clerk."

quoted in the notice. Nothing further was done by anyone with respect to the attempted appeal.

Throughout the superior court proceedings, from arraignment to judgment, appellant was represented by an attorney employed by him.

Counsel has been appointed by this court to assist him on this appeal.

In his petition for *coram nobis*, appellant asserts that his plea of guilty was brought about by "duress and psychological and mental coercion"; that it was motivated by the fact that he had made incriminating statements, which the police had elicited without a proper warning of his rights; that the district attorney had promised him a sentence of 90 days of observation at the Chino Institution for Men, after which he was to receive only a county jail sentence.

From the probation report, the district attorney's recommendation and the statements of the defendants which are in the file, some of the circumstances of the killing appear.

The victim had formerly lived as husband and wife with Mrs. Foreman. More recently she had been associating with appellant. The victim was shot in the woman's bedroom between 3 and 5 a.m. There was a knife in the victim's hand when the body was found. Mrs. Foreman first confessed to the police that she had fired the gun, then repudiated the confession with the explanation that she was trying to protect appellant. The latter admitted the killing but claimed self-defense. There were substantial discrepancies between the appellant's statement to the police and the woman's version as to the events which immediately preceded the killing. The latter's version would have supported a finding that appellant had gone beyond the necessities of defending himself and his paramour, and had used the occasion to dispose of a rival.

The plea of guilty constitutes a sufficient basis for the conviction. Unless the plea was invalid, it is useless for appellant to assert now that he was innocent, or that evidence in the hands of the prosecution was illegally obtained. ▮ On the other hand, if facts existed which would vitiate the plea of guilty, and which, without any fault or negligence of the appellant, were not presented to the court prior to judgment, a reasonably prompt petition for relief by writ of error *coram nobis* would entitle appellant to a hearing to determine the truth of the alleged facts. (*People* v. *Gilbert,* 25 Cal.2d 422, 442 [154 P.2d 657].) The issue, therefore, comes down to

whether appellant has stated facts which would be a basis for voiding his plea of guilty.

■ Appellant's first assertion, that his plea was induced by duress and coercion, is a conclusion unsupported by any factual statement which would satisfy the requirements mentioned in the *Shipman* opinion, quoted *supra*. He is not entitled to a hearing on that vague claim.

■ Appellant is in no position to contend now that his plea was improperly induced by his extrajudicial statements to the police. The trial court conducted an evidentiary hearing on September 30, 1965, and decided that the statements were admissible. Whether that decision was legally correct is now beside the point. The determination then made was not conclusive against appellant. He was entitled to go to trial and stand on his objections to the evidence; and if convicted, he could have moved for a new trial upon the same grounds urged here, and, if a new trial had been denied in the superior court, he could have obtained a review in an appellate court and a vindication there of any rights which had not been respected at the trial level. Instead appellant, with the advice and approval of his attorney, elected to plead guilty. It was appellant's choice to renounce the procedures afforded by the state to determine his guilt or innocence in a trial and appeal. He may not now reverse his position and set aside his plea so as to litigate the issues he knowingly abandoned.

■ With respect to appellant's contention that his plea was induced by a promise that he would not be sentenced to prison, these additional circumstances must be considered:

A reporter's transcript for October 4, 1965, which the trial judge ordered prepared at the time he denied the petition for *coram nobis,* shows the representations made by appellant when he asked leave to change his plea from not guilty of murder to guilty of manslaughter.

On October 4, 1965, in response to questions of the prosecutor, appellant stated that his attorney, Mrs. Duncan, had explained his constitutional rights and that he did not desire any further explanations, that no threat or promise of reward or immunity had been made to induce a change of plea, and that he was entering his plea because he was guilty and for no other reason. The final questions were:

"MR. KELLY: You realize, Mr. Lampkin, that probation and sentence will be determined entirely by his Honor, Judge Rosenthal, or any other judge of the Superior Court and neither myself nor Mrs. Duncan, nor anyone, can make any promises to you concerning this?

"DEFENDANT LAMPKIN: I understand.

"MR. KELLY: Do you understand that you may go to jail for this offense?

"DEFENDANT LAMPKIN: I do."

Thereafter the guilty plea was formally taken.

The probation report shows that appellant was 32 years of age and a high school graduate. His involvement with the law had been extensive. Between 1952 and 1965 he had been convicted of vagrancy (twice), possession of heroin, petty theft (three times), escape, burglary (three times), and deadly weapons possession. Each had been punished by a fine or a county jail term, except that he had served time in state prison for one burglary. He was on parole at the time of the homicide.

Attached to the probation report is a handwritten statement of appellant setting forth extenuating circumstances, and concluding: "I'm pleading for a County Jail sentence, or probation if possible."

It is noted that in the October 4, 1965, proceedings the prosecutor asked, "Do you understand that you may go to jail for this offense?" It is argued that this supports appellant's story that a county jail term had been promised. On the other hand, as negating any inference which could be drawn from that single statement, are these additional circumstances:

(1) Appellant had counsel whose duty it was to advise him of the prospect of a prison term for this offense. Appellant's petition contains no allegation that he was not advised by his attorney as to what the Penal Code prescribed.

(2) Appellant expressly represented to the court that no promise had been made, and that he understood no promise could be made by either attorney and that the sentence would be determined by the judge. The petition offers no explanation for his making these statements to the court if they were not true.

(3) Appellant wrote a letter pleading for "a County Jail sentence, or probation if possible," a request not consistent with a belief that nothing more severe than jail had been assured. The petition contains no explanation for this inconsistency.

(4) At the time of arraignment for judgment on November 10, 1965, appellant's attorney stated to the court in appellant's presence: "I would like to say I know the Court has no alternative but to send this man to prison. I would like to say for the benefit of the Adult Authority that I feel except for

the statements of the co-defendant I think the man had a very good chance of being acquited [*sic*]. I think that the man killed was a menace to society and we are well off having him dead rather than alive, and I would like that noted for the record.''

It is thus apparent that appellant's trial attorney was not aware of any promise that her client would not go to prison. The petition fails to disclose how the claimed arrangement for leniency could have been accomplished without the knowledge of counsel, or why it was so arranged.

The transcript of November 10, 1965, also shows that, prior to arraignment for judgment, the appellant's attorney moved for leave to withdraw the plea of guilty. The motion was submitted without argument and denied. There was this exchange with appellant:

''THE COURT: What would you like to say?

''THE DEFENDANT: I would just like to say that in view of the circumstances that have transpired in this case, too much evidence has been suppressed that I am quite sure your Honor would like to be informed of before sentencing me in this case, and in view of these circumstances I'd like to make a withdrawal of the plea of guilty and be tried—

''THE COURT: That motion has already been made by your attorney and I denied it then and I will deny it now.''

Penal Code section 1018 authorizes a change of plea at any time before judgment ''for good cause shown.'' No cause was asserted by counsel on November 10, 1965, presumably because counsel did not know of anything which would constitute good cause. Appellant's own statement, so far as it went before the court interrupted, contains no suggestion of any good cause for a change of plea.

(5) More than 14 months elapsed between the pronouncement of sentence and appellant's first statement that any promise had been made. Ordinarily a man so betrayed would have communicated that fact to his trial attorney or to the court in less time than that. Appellant was neither illiterate nor was he inexperienced in the procedures of courts and penal institutions.

Appellant's only attempt to explain the delay is to say that he was confused by the enactment of Penal Code section 1237.5 (which became effective September 17, 1965) and that he was unaware of the existence of the *coram nobis* remedy.

Assuming that appellant's reliance upon a supposed

remedy by appeal[2] explains a part of the delay, that does not explain very much of it. On January 5, 1966, the clerk of the superior court wrote to appellant advising him ''No further action will be taken until such time as you file with this office for presentation to the trial court the written statement required by Section 1237.5 Penal Code.'' The letter quoted the full text of the code section. Nothing further was heard from appellant until he submitted his petition for *coram nobis* filed January 23, 1967, over a year later.

The obstacle to relief now is not that appellant failed to invoke proper procedure, but that he is saying that he discovered on November 10, 1965, the date of sentence, that a fraud had been committed upon him; but this claim, first asserted 14 months afterwards, fails to explain either the delay or the multitude of facts and circumstances appearing in the record and indicating that there was no fraud.

In his brief appellant argues other claimed irregularities in the proceedings prior to judgment. Since those matters were neither alleged in the petition for *coram nobis* nor considered by the trial court in making the order appealed from, they need not be discussed here.

■ Inasmuch as the petition for a writ of *coram nobis,* read with other facts reflected in the superior court file, fails to state facts sufficient to entitle appellant to a hearing, the superior court had no jurisdiction to grant relief. Its order made under such circumstances is not deemed to be one ''affecting the substantial rights of the party'' within the meaning of Penal Code section 1237, subdivision 3, and it is therefore not appealable. (*People* v. *Thornton,* 233 Cal.App.2d 1, 3 [43 Cal.Rptr. 691].)

The appeal is dismissed.

Jefferson, J., and Kingsley, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied April 24, 1968.

---

[2]An appeal from the judgment, if allowed, would not have raised the issue of a fraudulently induced plea, since the facts constituting the asserted fraud would not have appeared in the record.