# IN THE SUPREME COURT OF CALIFORNIA

THE PEOPLE,
Plaintiff and Respondent,
v.
RAMON PATTON,
Defendant and Appellant.

S279670

Second Appellate District, Division Three
B320352

Los Angeles County Superior Court
TA144611

March 3, 2025

Justice Jenkins authored the opinion of the Court, in which Chief Justice Guerrero and Justices Corrigan, Liu, Kruger, Groban, and Evans concurred.

PEOPLE v. PATTON

S279670


Opinion of the Court by Jenkins, J.


In 2018, the Legislature amended the law of homicide, eliminating several theories of liability based on imputed malice.  It has also offered relief to those convicted under certain homicide theories, such as murder or attempted murder under the natural and probable consequences doctrine, whose convictions are now tainted.  (Pen. Code, § 1172.6, subd. (a).[1])  Petitioners seeking relief under section 1172.6 must, first, file a facially valid petition that states the statutory requirements for relief (*id.*, subd. (b)), and second, make a "prima facie showing" (*id.*, subd. (c)), before a court must issue an order to show cause and hold an evidentiary hearing on the ultimate question of resentencing at which the People will bear the burden of defending a conviction under the amended law (*id.*, subd. (d)).

With section 1172.6 petitions involving convictions after guilty pleas, a common scenario has unfolded.  An unrepresented petitioner submits a pre-printed form petition, such as one the Office of the State Public Defender provides, geared towards meeting the requirements for facial validity and obtaining counsel.  (§ 1172.6, subd. (b).)  The form allows the petitioner to declare eligibility for relief by checking boxes next to statements that correspond to statutory requirements for relief, including statements that petitioner was subject to

_____

[1]     Undesignated statutory references are to the Penal Code.

1

prosecution and conviction under an invalid theory and could not presently be convicted because of the changes to homicide law. The People, in contesting a petitioner's prima facie showing and seeking denial of a petition prior to an evidentiary hearing, reference specific facts within a petitioner's record of conviction — often within the preliminary hearing transcript — showing, in their view, why relief is unavailable. Petitioners, despite this, offer no factual counterweight and instead rely solely on the same checkbox allegations that demonstrated a petition's facial sufficiency to also make a prima facie showing. This scenario played out here. Defendant and petitioner Ramon Patton, who pleaded guilty to attempted murder and to intentionally discharging a firearm while doing so, proffered a declaration with checkbox allegations of entitlement to relief. The People referenced a preliminary hearing transcript supporting their contention that Patton was a lone shooter whose conviction did not implicate an invalid theory. Patton offered no response.

We hold that a petitioner who offers only conclusory allegations of entitlement to relief under section 1172.6, in response to a record of conviction that demonstrates the petitioner's conviction was under a still-valid theory, has not, thereby, made a prima facie showing. The Court of Appeal reached this conclusion with respect to Patton, noting he had not "even suggested what facts" might demonstrate that he was not the shooter and that his conviction was tainted by an invalid theory. (*People v. Patton* (2023) 89 Cal.App.5th 649, 657 (*Patton*).) After clarifying the prima facie showing that section 1172.6 requires, we affirm the judgment but remand, at Patton's request, to provide him an opportunity to amend his resentencing petition.

## I.    BACKGROUND

### A.    *Patton Pleads Guilty to Attempted Murder*

An information charged Patton with willful, deliberate, and premeditated attempted murder (§§ 187, subd. (a), 664, subd. (a)), carrying a loaded firearm (§ 25850, subd. (a)), and possessing a firearm as a felon (§ 29800, subd. (a)(1)).  The information also alleged various circumstances of the attempted murder that subjected Patton to increased punishment, including that the offense was for the benefit of a criminal street gang, was committed by the intentional use and discharge of a firearm, and involved great bodily injury.

At a preliminary hearing, police officers recounted watching surveillance video of a shooting at a motel office.  The court received into evidence several still photos from the video depicting a shooter firing his gun at a victim.  An officer who was familiar with Patton from previous encounters identified him as the shooter in the video.  Another officer testified the shooter in the video was wearing jeans matching those Patton was wearing in a photograph police later acquired.[2]  The defense presented no evidence.  The trial court held Patton to answer on all counts.

Patton eventually pleaded no contest to attempted murder and admitted the sentence-enhancing allegation under section

---

[2]    The Court of Appeal below did not rely on or describe certain portions of the People's preliminary hearing evidence.  It chose to "disregard[] any testimony that was admitted at the preliminary hearing under Proposition 115, codified as subdivision (b) of section 872."  (*People v. Patton, supra*, 89 Cal.App.5th at p. 652, fn. 2.)  Whether this choice was correct does not affect the outcome of this case.

12022.53, subdivision (c), that he had personally and intentionally discharged a firearm in the crime's commission. The People agreed to "strike the allegation of willful[ness], premeditation, and deliberation" related to the attempted murder (see § 664, subd. (a)) and to dismiss the remaining charges. Patton's attorney concurred in the plea and "stipulated to a factual basis." The trial court sentenced Patton to a total of 29 years in prison, comprising the statutorily prescribed upper term of nine years for the attempted murder and a consecutive 20-year term for the firearm enhancement.

## B. *Changes to the Law of Murder and Section 1172.6*

In 2018, after Patton's conviction and sentencing, the Governor signed Senate Bill No. 1437, making, effective as of January 1, 2019, ameliorative changes to our state's homicide law. (See *People v. Gentile* (2020) 10 Cal.5th 830, 846.) As part of these ameliorative changes, malice, a key element the People must prove in a murder prosecution, may no longer be imputed to a defendant solely because the defendant participated in another crime. (*Gentile*, at p. 846; § 188, subd. (a)(3); Stats. 2018, ch. 1015, § 2 (Sen. Bill No. 1437).) This means, for instance, that a defendant is no longer guilty of murder as an aider and abettor solely because the "natural and probable consequences" of that other crime included a confederate's commission of murder. (*Gentile*, at p. 842; see *id.* at pp. 842–843.)

The Legislature, to provide relief to those with existing murder convictions dependent on theories of the crime it had rejected, devised a path to resentencing. (*People v. Gentile*, *supra*, 10 Cal.5th at pp. 843, 847; *People v. Strong* (2022) 13 Cal.5th 698, 708 (*Strong*).) It has since expanded this path to

4

allow relief for those with "attempted murder" convictions based on "the natural and probable consequences doctrine." (§ 1172.6, subd. (a); Stats. 2021, ch. 551, § 2 (Sen. Bill No. 775).) The current resentencing statute, now codified in section 1172.6 but previously found in section 1170.95 (see *Strong*, at p. 708, fn. 2), provides that "a person convicted of . . . attempted murder under the natural and probable consequences doctrine . . . may file a petition with the court that sentenced the petitioner to have the petitioner's . . . conviction vacated and to be resentenced on any remaining counts when" three conditions apply. (§ 1172.6, subd. (a).) As relevant here, given the nature of Patton's prosecution, those enumerated conditions are: First, the charging document allowed the prosecution to "proceed under a theory of . . . attempted murder under a natural and probable consequences doctrine." (*Id.*, subd. (a)(1).) Second, petitioner was convicted of the attempted murder charge or accepted a plea offer in lieu of trial on such a charge. (*Id.*, subd. (a)(2).) And third, "petitioner could not be presently convicted" of the charge, given the changes to homicide law effective in 2019. (*Id.*, subd. (a)(3).)

A petition that includes "[a] declaration by petitioner that the petitioner is eligible for relief . . . , based on all the requirements of subdivision (a)," the case number and year of the petitioner's conviction, and whether the petitioner seeks counsel is facially sufficient and entitles the petitioner to counsel. (§ 1172.6, subd. (b); see *People v. Lewis* (2021) 11 Cal.5th 952, 957 (*Lewis*).) A facially sufficient petition also triggers the People's duty to submit a response and the petitioner's right to submit a reply on the question of whether a prima facie case for relief exists. (§ 1172.6, subd. (c).) "After the parties have had an opportunity to submit briefings, the court

shall hold a hearing to determine whether the petitioner has made a prima facie case for relief." (*Ibid.*) If the "petitioner makes a prima facie showing," then the trial court issues an order to show cause and holds "a hearing to determine whether to vacate the . . . conviction and to recall the sentence and resentence the petitioner." (*Id.*, subds. (c), (d).) At this hearing, evidence may be presented and "the burden of proof shall be on the prosecution to prove, beyond a reasonable doubt, that the petitioner is guilty of murder or attempted murder under" current law. (*Id.*, subd. (d)(3); see *Strong*, *supra*, 13 Cal.5th at p. 709.)

## C.    *Patton's Resentencing Petition*

In 2022, Patton filed a petition for resentencing under section 1172.6. On a pre-printed form developed by the Office of the State Public Defender,[3] he checked boxes next to statements indicating that he met the statutory conditions for relief found in subdivisions (a)(1) through (a)(3) and that he wanted court-appointed counsel to represent him. For instance, he checked boxes next to statements on the form asserting the charging document filed against him "allowed the prosecution to proceed under a theory of . . . attempted murder under the natural and

---

[3]    The current version of the Office's form is similar to the one Patton filed in this case. (See Office of the State Public Defender, Senate Bill (SB) 775 Information, p. 5 <https://www.ospd.ca.gov/wp-content/uploads/2024/05/SB-775-pro-per-packet-Accessible.pdf> [as of Mar. 3, 2025].) All Internet citations in this opinion are archived by year, docket number and case name at <https://courts.ca.gov/opinions/cited-supreme-court-opinions>.

probable consequences doctrine," asserting he "accepted a plea offer in lieu of a trial at which he could have been convicted of . . . attempted murder," and asserting he "could not presently be convicted of . . . attempted murder" because of the 2019 changes to the law of homicide. Following the form's minimalist prompts, he offered no specific facts in support of these statements. Patton then declared "under penalty of perjury that the above is true except as to that stated on information or belief or that which is legal conclusion and as to those, I believe them to be true."

The trial court deemed the petition facially sufficient and appointed counsel as Patton requested. The People then submitted a written response in which they argued Patton could not make a prima facie case for relief.[4] They asserted, by reference to the facts within the preliminary hearing transcript, that Patton, in committing attempted murder, was the sole participant in the shooting. The People also noted Patton's admission to discharging a firearm in commission of the crime. Thus, the People asserted that Patton had been convicted under a direct perpetrator theory of attempted murder and that this disqualified him from resentencing relief. Patton, the People asserted, was "the only person charged in this case" and nothing

_____

[4] The People note, before us, that some cases may be so "straightforward" as to prompt a concession of a prima facie showing. (See *People v. Porter* (2022) 73 Cal.App.5th 644, 652 ["The People concede petitioner may be able to establish a prima facie showing"].) And in answering the amicus brief of the Office of the State Public Defender, the People agreed, " 'if the record contains any indication [the petitioner] had an accomplice who may have been the killer, a prima facie case ordinarily would be readily established, even by conclusory assertions in a form petition.' "

suggested he was "aiding and abetting another perpetrator who committed the attempted murder in the commission of another crime that the attempted murder was the natural and probable consequence of." Patton offered no reply.

At a hearing on whether Patton had made a prima facie case for resentencing, the trial court began by noting that it had "read through the entirety of the preliminary hearing transcript" and "the plea transcript," and then asked whether "either side wish[es] to be heard further or augment the record in any way." Both sides declined. The court then found Patton failed to establish a prima facie case and denied the petition, explaining that, under the unrebutted preliminary hearing transcript, it would view defendant as the sole shooter, acting alone.

Patton appealed from the trial court's order and the Court of Appeal affirmed. (*Patton*, *supra*, 89 Cal.App.5th at p. 652.) It reasoned that the trial court properly considered the record of conviction, including the preliminary hearing transcript, and properly proceeded as though Patton was the actual shooter. (*Id.* at pp. 657–658.) The appellate court noted: "Police officers testified at the preliminary hearing that they had watched the surveillance video and they knew and recognized Patton as the sole perpetrator, who approached Jackson as he stood at the motel clerk's desk and fired several rounds at him. Those officers were personally involved in the investigation of the shooting of Jackson, and they were subject to cross-examination at the preliminary hearing. In the trial court, Patton never offered any theory to support his implicit contention now that he was an accomplice and not the person who actually shot Jackson. Nor, on appeal, has Patton even suggested what facts he has to demonstrate that someone else shot Jackson and he

8

was merely an accomplice." (*Id.* at p. 657.) The appellate court rejected Patton's contention that the trial court engaged in factfinding, weighed the evidence, or rejected his petition's allegations by making a credibility determination. (*Id.* at p. 658.) None of these activities "were or are necessary" to resolve the case, as the relevant preliminary hearing facts were "uncontroverted" and " 'irrefutably establishe[d] as a matter of law that' Patton was convicted as the actual perpetrator . . . under a valid theory of attempted murder that survives the" 2019 changes to the homicide law, making him ineligible for resentencing. (*Ibid.*)

Our Courts of Appeal have offered varied guidance on the role of preliminary hearing transcripts at the prima facie stage of resentencing proceedings. For instance, in *People v. Davenport* (2021) 71 Cal.App.5th 476, 481–484 and *People v. Flores* (2022) 76 Cal.App.5th 974, 991, the appellate courts held, prior to the decision below, that a trial court may rely on a preliminary hearing transcript to deny resentencing relief at the prima facie stage only if the defendant has stipulated to the transcript or to the relevant testimony therein as the basis of a guilty plea. (Cf. *People v. Rivera* (2021) 62 Cal.App.5th 217, 235 [a defendant's stipulation, as the basis of a guilty plea, to the transcript of grand jury proceeding could not conclusively establish facts "absent an indication that . . . defendant admitted the[ir] truth"].) In *People v. Pickett* (2023) 93 Cal.App.5th 982, 990, similar to *Patton*, the appellate court held that when "the People introduce without objection uncontroverted evidence from the preliminary hearing transcript showing that the defendant acted alone in killing the victim, and the defendant does not put forth, by way of briefing or oral argument, any factual or legal theory in support of his

petition, the defendant has failed to make a prima facie showing for relief." In *People v. Mares* (2024) 99 Cal.App.5th 1158, 1173, the appellate court held that a trial court could deny relief at the prima facie stage if the record of conviction "refutes [a petitioner's] conclusory assertion" that the 2019 changes to homicide law would foreclose a conviction. More recently, in *People v. Muhammad* (2024) 107 Cal.App.5th 268, 279, the appellate court division that issued *Patton* held that where a "preliminary hearing transcript supported only a theory that [the petitioner] acted alone and as the direct perpetrator" and the "uncontroverted record" did not show otherwise, the petitioner had not made a prima facie showing. In contrast, a majority of the appellate court in *People v. Williams* (2024) 103 Cal.App.5th 375 (*Williams*), and in *People v. Alazar* (2024) 105 Cal.App.5th 1100, rejected use of a preliminary hearing transcript at the prima facie stage, reasoning in part that even if the transcript's contents were undisputed, those contents could still be "disbelieved." (*Williams,* at p. 403; see *Alazar*, at p. 1109 ["We believe *Williams* was correctly decided"]; but see *Williams*, at p. 406 (dis. opn. of Meehan, J.), and *Alazar*, at p. 1112 (dis. opn. of Gilbert, J.).) We granted review to clarify the prima facie inquiry under section 1172.6.

## II.  DISCUSSION

As described above, the path to resentencing under section 1172.6 involves three stages. It begins with a facially valid petition that entitles petitioner to counsel, continues with asking whether petitioner has made a prima facie case for relief, and, if so, proceeds to an evidentiary hearing on the ultimate question of whether petitioner should be resentenced. If a petitioner who files a facially valid petition fails, at the second step, to make a prima facie showing, then the court denies the

petition and provides no relief. (§ 1172.6, subd. (c).) We addressed the concept of facial validity and the prima facie showing requirement in *Lewis*, *supra*, 11 Cal.5th at pp. 957, 959–960, 967, 970–972, and the Legislature, in Senate Bill No. 775, expressly "[c]odifie[d] the holdings of [*Lewis*] regarding petitioners' right to counsel and the standard for determining the existence of a prima facie case" (Stats. 2021, ch. 551, § 1, subd. (b)). That is, the Legislature endorsed *Lewis*'s description of the habeas prima facie standard as "analogous" to the one at issue here. (*Lewis*, *supra*, 11 Cal.5th at p. 971.)

A petition's facial validity, entitling petitioner to counsel, is readily established by recitation of section 1172.6's requirements. (§ 1172.6, subd. (b)(3).) The court is instructed to consider both the information a petitioner "set[s] forth" and also any information "missing" from the petition that the court can "readily ascertain[]." (*Ibid.*) At this initial stage, "substantive merit" is not the question. (*Lewis*, *supra*, 11 Cal.5th at p. 968.) This minimal compliance requirement for "[a]ppointing counsel" assures a petitioner assistance "in navigating the[] complex theories" of murder liability a section 1172.6 petition implicates that are " 'not easily understood by an unrepresented litigant,' " thus promoting the reliability of the petitioning process. (*Id.* at p. 967.)

"[T]he prima facie inquiry under subdivision (c)" — the relevant inquiry here — is, also, "limited." (*Lewis*, *supra*, 11 Cal.5th at p. 971.) It is not, however, simply duplicative of the facial inquiry.[5] (*Id.* at pp. 968, 971.) For instance, we explained

---

[5] As noted, Senate Bill No. 775 codified *Lewis*'s holdings regarding the facial validity and prima facie standards. (Stats.

in *Lewis* that after the appointment of counsel, a court looks beyond the face of the petition. We stated: "The record of conviction will necessarily inform the trial court's prima facie inquiry . . . , allowing the court to distinguish petitions with potential merit from those that are clearly meritless. This is consistent with the statute's overall purpose: to ensure that murder culpability is commensurate with a person's actions, while also ensuring that clearly meritless petitions can be efficiently addressed" without the need for an evidentiary hearing. (*Id.* at p. 971.)

We described the prima facie inquiry under section 1172.6 as "analogous" to the prima facie inquiry in habeas corpus proceedings. (*Lewis, supra,* 11 Cal.5th at p. 971.) Citing habeas authorities, we stated " ' "the court takes petitioner's factual allegations as true and makes a preliminary assessment regarding whether the petitioner would be entitled to relief if [those] factual allegations were proved. If so, the court must issue an order to show cause." ' [Citation.] '[A] court should not reject the petitioner's factual allegations on credibility grounds without first conducting an evidentiary hearing.' [Citations.] 'However, if the record, including the court's own documents, "contain[s] facts refuting the allegations made in the petition," then "the court is justified in making a credibility determination

_____

2021, ch. 551, § 1, subd. (b).) Just prior to *Lewis,* the Legislature considered a version of Senate Bill No. 775 that would have stated "a prima facie showing has been made unless the declaration fails to comply with the requirements of subdivision (a)." (Sen. Bill No. 775 (2021–2022 Reg. Sess.) § 1, as introduced Feb. 19, 2021.) After we decided *Lewis,* the Legislature rejected this proposal in favor of *Lewis*'s facial screening step for noncompliant petitions and its higher standard for the prima facie inquiry. (See *Lewis, supra,* 11 Cal. 5th at p. 968.)

adverse to the petitioner." ' " (*Ibid.*) We cautioned that "[i]n reviewing any part of the record of conviction at this preliminary juncture, a trial court should not engage in 'factfinding involving the weighing of evidence or the exercise of discretion.' " (*Lewis, supra*, 11 Cal.5th at p. 972.)

Turning to the record before us, Patton submitted a pre-printed form declaration with checked boxes indicating his belief that he met the statutory requirements for relief. In response, the People offered the preliminary hearing transcript. In the lower courts' view, the transcript disqualified Patton from resentencing because it reflected he was the sole and direct perpetrator of the shooting such that his conviction was not based on the natural and probable consequences theory. Instead, in the Court of Appeal's words, he was "convicted, by his plea, under a valid theory of attempted murder." (*Patton, supra*, 89 Cal.App.5th at p. 658; see generally *People v. Delgadillo* (2022) 14 Cal.5th 216, 233, citing § 1172.6, subd. (a) [as petitioner was the "only participant in the killing," he was not convicted under an invalid theory and could not have made a prima facie showing of relief].) Patton's plea to the section 12022.53, subdivision (c) enhancement for intentional discharge of a firearm in the commission of the attempted murder tended to corroborate this view. In the courts below, Patton did not challenge this version of events or their consequences; instead, Patton objected to the use of any facts within the preliminary hearing transcript to refute his conclusory allegations of entitlement to relief.[6]

---

[6] As in *Lewis*, we granted review to address how the record of conviction may be used at the prima facie stage of section

We reach, then, the issue presented here. May a court, in determining at the prima facie stage whether a petitioner was convicted under a now-invalid theory, rely on unchallenged, relief-foreclosing facts within a preliminary hearing transcript to refute conclusory, checkbox allegations, or would that constitute impermissible judicial factfinding? As we explain, a court may do so.

*Lewis* itself already establishes that " 'if the record, including the court's own documents, "contain[s] facts refuting the allegations made in the petition," then "the court is justified in making a credibility determination adverse to the petitioner." ' " (*Lewis*, *supra*, 11 Cal.5th at p. 971.) Conclusory allegations, such as the checkbox ones offered here, are particularly subject to refutation by the record of conviction. *Lewis* suggested just this when emphasizing that the prima facie inquiry, to serve its important function of "distinguish[ing] petitions with potential merit from those that are clearly meritless," involves looking beyond such legal conclusions to "[t]he record of conviction [which] will necessarily inform the" inquiry. (*Ibid.*) *Lewis* also noted the importance, drawing from the habeas context, of accepting a " ' "petitioner's *factual* allegations." ' " as true (*ibid.*, emphasis added) as opposed to conclusory ones. In making this point, *Lewis* cited *In re Serrano*

1172.6 petitions, "not . . . to resolve what is substantively required" for relief. (*Lewis*, *supra*, 11 Cal.5th at p. 972, fn. 6.) We likewise do not address whether the analysis may differ depending on whether the court is assessing, as the Court of Appeal did here, (1) whether the petitioner was convicted on a now-invalid theory (§ 1172.6, subd. (a)), as opposed to (2) whether the "petitioner could not presently be convicted" under a valid theory "because of [the 2019] changes" to homicide law (§ 1172.6, subd (a)(3)).

(1995) 10 Cal.4th 447, 456, which in turn noted the need for a habeas petitioner to offer a " 'statement of specific facts which, if established, entitle [petitioner] to . . . relief.' "

Our habeas cases clearly establish that "conclusory allegations without specific factual allegations do not warrant" habeas relief (*In re Reno* (2012) 55 Cal.4th 428, 493), " 'let alone an evidentiary hearing' " (*People v. Duvall* (1995) 9 Cal.4th 464, 474). In other words, conclusory allegations do not meet a habeas petitioner's prima facie burden. (*Id.* at pp. 474–475.) Instead, we "require[]" a habeas petitioner to "detail[] the facts upon which a conclusionary allegation is based." (*In re Swain* (1949) 34 Cal.2d 300, 302; *id.* at p. 303 [denying relief where "no allegations of specific facts supporting the conclusions of fraud and untruthfulness"].) This particularity requirement helps courts identify "material issues of disputed fact." (*In re Hamilton* (1999) 20 Cal.4th 273, 284 [contrasting the absence of a prima facie case with a showing of a "material issues of disputed fact"].) It does not impose "technicalities; it simply demands of [the petitioner] a measure of frankness in disclosing [the relevant] factual situation" supporting relief. (*Swain,* at p. 304.)

We acknowledge the habeas process does not seamlessly map onto the section 1172.6 process.[7] However, *Lewis*, which

---

[7] For instance, habeas petitions do not receive appointment of counsel prior to making a prima facie showing. (*Lewis, supra,* 11 Cal.5th at p. 973.) Also, while habeas petitioners bear the burden of proof throughout the process, the People, as respondent in section 1172.6 proceedings, bear the burden of proof beyond a reasonable doubt to prove the defendant guilty at the evidentiary hearing under subdivision (d)(3). (See *In re Manriquez* (2018) 5 Cal.5th 785, 797.)

the Legislature endorsed insofar as it addressed the prima facie standard, incorporates, as explained, discomfort with conclusory allegations. Furthermore, the rejection of conclusory allegations is a familiar, well-established rule of pleading that extends beyond the habeas context. (See *County of Santa Clara v. Superior Court* (2023) 14 Cal.5th 1034, 1041 [we do not assume the truth of a civil complaint's " 'contentions' " or alleged " 'conclusions of law' "].)

It follows from *Lewis* and these hornbook pleading principles that a section 1172.6 petitioner who, despite having access to counsel upon submission of a facially sufficient petition, offers only conclusory allegations of entitlement to relief, in response to a record of conviction that demonstrates the petitioner's conviction was under a still-valid theory, has not, thereby, made a prima facie showing.[8] Where facts from

---

[8] Given *Lewis* and these pleading principles, the appellate court in *Williams*, *supra*, 103 Cal.App.5th at p. 403, erroneously concluded that the record of conviction cannot "rebut a facially sufficient petition." Furthermore, *Williams*'s reliance on *People v. Curiel* (2023) 15 Cal.5th 433 in reaching this broad conclusion was misplaced. *Curiel* concerned what facts, related to whether Curiel could presently be convicted of murder because of the 2019 amendments to homicide law (see § 1172.6, subd. (a)(3)), could be conclusively established, as a matter of issue preclusion, from certain jury findings after a contested jury trial where petitioner had maintained his innocence and not pleaded guilty, and where an invalid theory was supported by the evidence and argued by the parties. (*Curiel*, at pp. 440–446, 470–471; *id.* at p. 442 [the evidence showed "Curiel did not have anything to do with the shooting"].) In that scenario, we would not foreclose section 1172.6 relief at the prima facie stage unless the at-issue jury findings "conclusively establishe[d] every element of the offense" under a valid theory. (*Id.* at p. 463.)

the record of conviction are undisputed, accepting them over contrary legal allegations that are merely conclusory is not "factfinding involving the weighing of evidence or the exercise of discretion." (*Lewis, supra,* 11 Cal.5th at p. 972; see *Guardianship of Saul H.* (2022) 13 Cal.5th 827, 856, fn. 9 [contrasting the application of law to undisputed facts with factfinding]; *Maas v. Superior Court* (2016) 1 Cal.5th 962, 977 [the prima facie inquiry in habeas matters presents a question of law and "does not involve resolution of a contested issue of *fact,*" even though conclusory allegations may be rejected].) Indeed, denial of a resentencing petition because its conclusory allegations do not counter the facts in a record of conviction that forecloses relief is a determination that the petition's allegations are legally deficient, "not a ruling on the merits of the issues which petitioner has attempted to raise." (*In re Swain, supra,* 34 Cal.2d at p. 304.)

Nor does requiring nonconclusory allegations, as Patton contends, improperly shift a burden of proof to petitioners. Instead, it reflects that, even if the prima facie "burden" (*Lewis,* at p. 965; cf. *People v. Duvall, supra,* 9 Cal.4th at p. 474 [the

---

Cases such as the one before us, however, concern whether undisputed facts from a record of conviction following a guilty plea can address whether petitioner's conviction was under a now-invalid theory. (See § 1172.6, subd. (a).) Notably, the parties in *Curiel* did not argue that facts in the trial record demanded certain conclusions about resentencing eligibility, and we expressly declined to opine on "how, or even whether" a court might look at jury trial evidence for this purpose. (*Curiel,* at p. 465, fn. 6.) We disapprove of *People v. Williams, supra,* 103 Cal.App.5th 375, and also *People v. Alazar, supra,* 105 Cal.App.5th 1100, to the extent they are inconsistent with this opinion.

habeas petitioner bears the "initial burden of pleading"]) is a " 'bar' " that is set " 'very low' " (*Lewis*, at p. 972), a "petitioner" must nonetheless "make[] a prima facie showing" (§ 1172.6, subd. (c)) to frame a disputed issue that entitles that petitioner to an evidentiary hearing.[9] This requirement is simply the "frankness" (*In re Swain*, *supra*, 34 Cal.2d at p. 304) due our trial courts so they can effectively screen out and "distinguish . . . clearly meritless petitions" (*Lewis*, at p. 971).

The ultimate question at the prima facie stage is whether to proceed to an evidentiary hearing. As noted, the prima facie inquiry is more demanding than the inquiry into facial validity. But petitioners need not, at the prima facie stage, meet an evidentiary burden of proof to establish entitlement to relief, such as the burden of proof applicable to the People if trying to defeat relief at the later subdivision (d)(3) hearing.[10] Rather,

---

[9] Other prima facie inquiries are seen as imposing burdens on the party that must make a showing. (*People v. Johnson* (2019) 8 Cal.5th 475, 506 [describing the " 'prima facie burden' " in challenging a peremptory strike as based on race]; *Wilson v. Cable News Network, Inc.* (2019) 7 Cal.5th 871, 888 [discussing, in the anti-SLAPP context, a " ' "burden to provide a prima facie showing of the merits of the plaintiff's case" ' "]; *Hampton v. County of San Diego* (2015) 62 Cal.4th 340, 358 [discussing a "public entity's prima facie burden with respect to the discretionary approval element of design immunity"]; *Reid v. Google, Inc.* (2010) 50 Cal.4th 512, 520, fn. 2 [an "employee must first establish a prima facie case of discrimination" which is a "burden"]; *Donohue v. AMN Services, LLC* (2021) 11 Cal.5th 58, 79 ["If AMN renews its motion for summary adjudication, it must satisfy the initial burden of production and make a prima facie showing"].)

[10] Thus, while it may be that a record can " ' "refut[e] the allegations made in the petition" ' " (*Lewis*, *supra*, 11 Cal.5th at

petitioners confronting a record of conviction that demonstrates relief is unavailable have the burden of coming forward with nonconclusory allegations to alert the prosecution and the court to what issues an evidentiary hearing would entail. It follows from what we have said already that should a trial court encounter a material fact dispute, the court may not resolve that dispute at the prima facie stage and should instead grant petitioner an evidentiary hearing, assuming relief is not otherwise foreclosed.

A dispute regarding the basis of a conviction might arise if, for instance, a petitioner points to specific facts that identify someone else as the direct perpetrator. At the least, as the People note (see *ante*, fn. 4), this may come from the record itself. But absent specific facts, no such dispute arises, as Patton asserts, from mere latent, speculative possibilities; that is, a hypothetical alternate direct perpetrator cannot be conjured from thin air or a legal conclusion. (See *Chicago Title Ins. Co. v. Great Western Financial Corp.* (1968) 69 Cal.2d 305, 327 ["unsupported speculation and argumentative allegations" do not suffice for a pleading to survive a demurrer]; *Dominguez v. Bonta* (2022) 87 Cal.App.5th 389, 398 [same].)

A petitioner has multiple opportunities to proffer specific facts. As noted above, the initial petition itself, which is not limited to the allegations found on pre-printed forms, begins,

p. 971), it would be somewhat imprecise to say that evidence in a preliminary hearing transcript, offered at the prima facie stage, " 'irrefutably *establishes*' " any particular fact to any particular standard of proof (*Patton, supra*, 89 Cal.App.5th at p. 658, italics added). A conclusion that a record refutes an allegation at the prima facie stage is not, moreover, a conclusion about the strength of evidence in the record.

but does not end, the inquiry. Subdivision (c) expressly anticipates a petitioner's reply to the People's response and, "[a]fter the parties have had an opportunity to submit briefings," arguments at a hearing. (§ 1172.6, subd. (c).) Indeed, the response and reply called for under section 1172.6 are similar to the habeas setting's informal response and reply, which themselves play a crucial role in determining a habeas petitioner's prima facie showing. "Through the informal response, the [responding party] may demonstrate, by citation of legal authority and by submission of factual materials, that the claims asserted in the habeas corpus petition lack merit and that the court therefore may reject them summarily . . . . If the petitioner successfully controverts the factual materials submitted with the informal response, or if for any other reason the informal response does not persuade the court that the petition's claims are lacking in merit, then the court must proceed to the next stage by issuing an order to show cause . . . ." (*People v. Romero* (1994) 8 Cal.4th 728, 742, fn. omitted; see also *Maas v. Superior Court, supra,* 1 Cal.5th at p. 974 [discussing the role of the informal response in habeas matters].) "[A] petitioner is afforded an opportunity to file a reply to any informal response" to controvert facts raised therein. (*In re Jenkins* (2023) 14 Cal.5th 493, 519, fn. 23.)

Courts should, moreover, implement section 1172.6 so that petitioners have "meaningful" opportunities to present their petitions. (*Lewis, supra,* 11 Cal.5th at p. 966, fn. 4; see *People v. Romero, supra,* 8 Cal.4th at p. 741 ["denial of a petition based on factual assertions in an informal response might violate due process if the petitioner was afforded no opportunity to challenge the assertions"].) Nothing in subdivision (c), for instance, has dissuaded courts from, as appropriate, permitting

a substitute petition for resentencing after appointment of counsel. (See *In re Lopez* (2016) 246 Cal.App.4th 350, 356 ["Counsel was appointed to represent Petitioner, and counsel filed an amended petition asserting two claims for habeas corpus relief"]; *In re Andrew S.* (1994) 27 Cal.App.4th 541, 543, fn. 1 [after "different counsel was appointed to represent mother" a "second supplemental opening brief was filed"]; *People v. Long* (1957) 152 Cal.App.2d 716, 719 [petitioner "requested the appointment of counsel, and a supplemental brief was filed by counsel so appointed"].)

Finally, there is no dispute that the record of conviction the parties may consult at the prima facie stage includes a preliminary hearing transcript preceding a guilty plea. (*People v. Reed* (1996) 13 Cal.4th 217, 223 (*Reed*).) We have, to be sure, placed limits on the use of preliminary hearing transcripts to prove disputed facts, but these limits are inapplicable here. In *Reed,* we held that applicable rules of admissibility would circumscribe a preliminary hearing transcript's use as evidence to prove a sentence enhancement at a contested jury trial at which the prosecution bore the burden of proof. (*Reed*, *supra*, 13 Cal.4th at pp. 220–221, 224–227; see *People v. Miles* (2008) 43 Cal.4th 1074, 1082 [describing the prosecution's burden to prove sentence enhancements].) And later, in *People v. Gallardo* (2017) 4 Cal.5th 120, at pages 124–125, we forbade courts from conducting an independent review of preliminary hearing transcripts of guilty pleas to resolve " 'disputed facts' " (*id.* at p. 126) about those convictions that, under the Sixth Amendment, needed resolution by a jury. But as explained, resolution of the prima facie inquiry in Patton's case did not call for resolution of

21

a factual dispute in the sense that *Reed* or *Gallardo* addressed.[11] Rather than resolving a contested factual dispute, statements within Patton's preliminary hearing transcript contributed specific factual assertions about his conviction — namely, that it was premised on him being the sole shooter. Patton's conclusory checkbox allegations alone could not create a factual dispute about whether he played a meaningfully different role in the attempted murder.

To the extent courts of appeal have conditioned use of preliminary hearing transcripts at the prima facie stage on whether a defendant, when pleading guilty, stipulated to the transcript or its contents, they have overlooked the issue-framing role a transcript can play at the prima facie stage of the resentencing process. (Cf. *People v. Davenport* (2021) 71 Cal.App.5th 476, 481–484, and *People v. Flores* (2022) 76 Cal.App.5th 974, 991.)[12] The absence of such a stipulation during an earlier plea colloquy does not eliminate this role.

---

[11] The extent to which it might be proper to rely on a preliminary hearing transcript at the evidentiary hearing under subdivision (d) is not before us. At such a hearing, the statute permits consideration of "evidence previously admitted at any prior hearing or trial that is admissible under current law, including witness testimony, stipulated evidence, and matters judicially noticed" except "hearsay evidence that was admitted in a preliminary hearing pursuant to subdivision (b) of Section 872 . . . , unless the evidence is admissible pursuant to another exception to the hearsay rule." (§ 1172.6, subd. (d)(3).)

[12] We disapprove these decisions to the extent they conditioned the use of preliminary hearing transcripts on whether a petitioner previously admitted the truth of testimony contained therein or stipulated to the transcript as the factual basis of a plea.

To summarize, Patton offered only conclusory allegations of entitlement to resentencing relief under section 1172.6 in response to a record of conviction that the lower courts viewed as foreclosing it because that record foreclosed the conclusion that Patton's conviction was under a now-invalid homicide theory. Patton's petition contains only a checkbox declaration with legal conclusions, he submitted no reply, and he made no argument when invited to do so at the prima facie hearing. After determining the facial validity of a resentencing petition and before ordering an evidentiary hearing, a trial court may properly, at the prima facie stage, reference the record of conviction to " ' "refut[e]" ' " (*Lewis*, 11 Cal.5th at p. 971) conclusory allegations in furtherance of its statutorily required screening function at that juncture of a section 1172.6 proceeding. The Court of Appeal correctly concluded this is not impermissible factfinding and correctly concluded Patton had not, on the record before it, made a prima facie showing.

In light of Patton's request at oral argument, however, to be permitted to plead additional facts on remand should we affirm, we — out of an abundance of caution — will order a remand to the superior court with directions for that court to consider an amended petition should Patton, within 30 days of that remand, seek to file one. (Cf. § 1172.6, subd. (c) [providing 30 days for a petitioner to reply to the People's response].) We express no opinion on the viability of any additional facts Patton might allege.

## III. DISPOSITION

We instruct the Court of Appeal to remand this matter to the superior court with directions for that court to consider an amended petition should Patton, within 30 days of that remand,

seek to file one.  We otherwise affirm the judgement of the Court of Appeal.

**JENKINS, J.**

**We Concur:**

**GUERRERO, C. J.**
**CORRIGAN, J.**
**LIU, J.**
**KRUGER, J.**
**GROBAN, J.**
**EVANS, J.**

*See next page for addresses and telephone numbers for counsel who argued in Supreme Court.*

**Name of Opinion**  People v. Patton

_____

**Procedural Posture** (see XX below)
**Original Appeal**
**Original Proceeding**
**Review Granted (published)** XX 89 Cal.App.5th 649
**Review Granted (unpublished)**
**Rehearing Granted**

_____

**Opinion No.** S279670
**Date Filed:** March 3, 2025

_____

**Court:**  Superior
**County:**  Los Angeles
**Judge:**  Hector E. Gutierrez

_____

**Counsel:**

Jonathan E. Demson, under appointment by the Supreme Court, for Defendant and Appellant.

Galit Lipa, State Public Defender, and Elias Batchelder, Deputy State Public Defender, for the Office of the State Public Defender as Amicus Curiae on behalf of Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Assistant Attorney General, Michael R. Johnsen, Idan Ivri, Charles S. Lee, Kathy S. Pomerantz and Amanda V. Lopez, Deputy Attorneys General, for Plaintiff and Respondent.

**Counsel who argued in Supreme Court (not intended for publication with opinion):**

Jonathan E. Demson
Attorney at Law
2632 Wilshire Boulevard #291
Santa Monica, CA 90403
(310) 405-0332

Amanda V. Lopez
Deputy Attorney General
300 South Spring Street, Suite 1702
Los Angeles, CA 90013
(213) 269-6118